## McLEAN v. STATE OF ARKANSAS.

ERROR TO THE SUPREME COURT OF THE STATE OF ARKANSAS.

No. 29. Submitted November 30, 1908.—Decided January 4, 1909.

Liberty of contract which is protected against hostile state legislation is not universal, but is subject to legislative restrictions in the exercise of the police power of the State.

The police power of the State is not unlimited and is subject to judicial review, and laws arbitrarily and oppressively exercising it may be annulled as violative of constitutional rights.

The legislature of a State is primarily the judge of the necessity of exercising the police power and courts will only interfere in case the act exceeds legislative authority; the fact that the court doubts its wisdom or propriety affords no ground for declaring a state law unconstitutional or invalid.

In the light of conditions surrounding their enactment this court will not hold that the legislative acts requiring coal to be measured for payment of miners' wages before screening are not reasonable police regulations and within the police power of the State; and so held that the Arkansas act so providing is not unconstitutional under the

due process or the equal protection clauses of the Fourteenth Amendment.

It is not an unreasonable classification to divide coal mines into those where less than ten miners are employed and those where more than that number are employed, and a state police regulation is not unconstitutional under the equal protection clause of the Fourteenth Amendment because only applicable to mines where more than ten miners are employed.

81 Arkansas, 304, affirmed.

THE facts, which involved the constitutionality of the Arkansas coal miners' wages act, are stated in the opinion.

*Mr. Daniel B. Holmes* for plaintiff in error:

The act violates the Fourteenth Amendment to the Constitution by restricting the right to contract, by taking property without due process of law, by unlawful discrimination and by denying to certain operators and workers in coal mines the right of civil liberty and the pursuit of happiness.

Such a statute acts as a restriction upon the liberty both of employer and employed. *Ritchie* v. *People*, 155 Illinois, 88; *In re Morgan*, 58 Pac. Rep. 1072.

The right to purchase or sell labor is one of the rights protected by the Fourteenth Amendment. *Allgeyer* v. *Louisiana*, 165 U. S. 578; *Adair* v. *United States*, 208 U. S. 161; *State* v. *Haun*, 61 Kansas, 146; *Ritchie* v. *People*, 155 Illinois, 88, and cases cited; *Ramsey* v. *People*, 32 N. E. Rep. 364; *State* v. *Wilson*, 61 Kansas, 32; *In re House Bill, No. 203*, 39 Pac. Rep. 432; *Whitebreast Fuel Co.* v. *People*, 51 N. E. Rep. 853; *State* v. *Loomis*, 115 Missouri, 316; *Godcharles* v. *Wigeman*, 6 Atl. Rep. 354; *Braceville Coal Company* v. *People*, 35 N. E. Rep. 62; *State* v. *Julow*, 129 Missouri, 163; *Ex parte Kubach*, 24 Pac. Rep. 737.

The act herein in question is not a proper or valid exertion of the police power of the State. *State* v. *Haun*, 61 Kansas, 146; *People* v. *Warden &c.*, 51 N. E. Rep. 1011; *Butchers' Union Co.* v. *Crescent City Co.*, 111 U. S. 757; *Mugler* v. *Kan-*

sas, 123 U. S. 623; *Lawton* v. *Steele*, 152 U. S. 137; *Allgeyer* v. *Louisiana*, 165 U. S. 589; *Lochner* v. *New York*, 198 U. S. 57; *People* v. *Gillson*, 98 N. Y. 108; *Live Stock Dealers' Association* v. *Crescent City Association*, 1 Abb. U. S. 388; *S. C.*, 15 Fed. Cas. 652.

The courts have often placed limitations upon the power of the State to interfere with ordinary private business under the guise of an exercise of the police power. *In re Aubery*, 78 Pac. Rep. 900; *Horwich* v. *Laboratory Co.*, 68 N. E. Rep. 938; *Liquor Co.* v. *Platt*, 148 Fed. Rep. 902; *Ruhstrat* v. *People*, 57 N. E. Rep. 41; *Iron Co.* v. *State*, 66 N. E. Rep. 1004; *Fisher Co.* v. *Woods*, 79 N. E. Rep. 837.

The act is clearly unconstitutional and void because of the classification which it adopts of operators and laborers in mines where ten or more men are employed underground, leaving operators and laborers in all other mines free to make their own bargains and contracts for labor therein. *Gulf, C. & S. F. R. Co.* v. *Ellis*, 165 U. S. 150; *Cotting* v. *Kansas City Stock-yards Co.*, 183 U. S. 79; *State* v. *Haun*, 61 Kansas, 146.

*Mr. James Brizzolara*, *Mr. Henry L. Fitzhugh* and *Mr. William F. Kirby*, Attorney General of the State of Arkansas, submitted:

The sole object of this statute is to protect the miner; to see that he is honestly paid for his labor, and to prevent fraud in the measurement of coal mined. The Arkansas screen law is substantially the same as, we might say almost identical with, the statutes of other States. § 8786, Dig. Mo. Stat., 1899; chap. 82, Acts of Legislature W. Va., 1891; §§ 4000–4005, Gen. Stat. of Kansas, 1899; § 7840, Rev. Stat of Ind., 1897; *State* v. *Peel Splint Coal Co.*, 36 W. Va. 802; *Wilson* v. *State*, 61 Kansas, 34.

There can be no liberty of contract when such contract is in conflict with the public welfare. The State's right to exercise its police power in restraint of liberty of contract has been recognized in a large number of instances. *Patterson* v.

*Enders,* 190 U. S. 169; *Harbinson* v. *Knoxville Iron Co.,* 183
U. S. 13.; *In re Considine,* 83 Fed. Rep. 157.; *Frisbie* v. *Uni-
ted States,* 157 U. S. 160; *Soon Hing* v. *Crowley,* 113 U. S. 703;
*Holden* v. *Hardy,* 169 U. S. 366; *Munn* v. *Illinois,* 94 U. S. 113;
*Pierce* v. *Kimball,* 9 Maine, 54; *State* v. *Moore,* 10 S. E. Rep.
143.

The statute is not void because of the classification adopted,
which is reasonable and proper. *Mo. Pac. Ry. Co.* v. *Mackey,*
127 U. S. 205; *St. L., I. M. & S. Ry. Co.* v. *Paul,* 173 U. S. 404;
*Dow* v. *Beidelman,* 125 U. S. 680; *New York Ry. Co.* v. *People,*
165 U. S. 628; *Mason* v. *State,* 179 U. S. 328.

See also the following decisions upon the right of the legis-
lature to discriminate between different classes of corporations
and individuals. *Ford* v. *Chicago Milk Shippers' Association,*
155 Illinois, 166; *Harding* v. *Am. Glucose Co.,* 182 Illinois, 551;
*Re Oberg,* 21 Oregon, 406; *State ex rel. Chandler* v. *Main,* 16
Wisconsin, 399; *Mo. Pac. Ry.* v. *Humes,* 115 U. S. 512; *Sullivan*
v. *Hong,* 82 Michigan, 548; *Covington Ry. Co.* v. *Sandford,* 164
U. S. 578; *New York Ry.* v. *Bristol,* 151 U. S. 556; *Brown* v.
*Dakota,* 153 U. S. 391; *Lowe* v. *Kansas,* 163 U. S. 81; *Duncan*
v. *Missouri,* 151 U. S. 377; *Munn* v. *Illinois,* 94 U. S. 133.

Equal protection is not denied where the law operates alike
upon all persons similarly situated. *Watson* v. *Nervin,* 128
U. S. 578; *State* v. *Schlemmer,* 42 La. Ann. 8; *State* v. *Moore,*
104 N. C. 714; *Ex parte Swann,* 96 Missouri, 44; *Barbier* v.
*Connelly,* 113 U. S. 32; *Soon Hing* v. *Crowley,* 113 U. S. 709;
*Hayes* v. *Missouri,* 120 U. S. 68; *Minneapolis & St. L. Ry.
Co.* v. *Beckwith,* 129 U. S. 26; *Kentucky Ry. Tax Cases,* 115
U. S. 321; *Magoun* v. *Ill. Trust & Savings Bank,* 170 U. S. 282.

Mr. Justice Day delivered the opinion of the court.

This proceeding is brought to review the judgment of the
Supreme Court of Arkansas (81 Arkansas, 304), affirming a
conviction of the plaintiff in error for violation of a statute of
the State of Arkansas, entitled "An act to provide for the

weighing of coal mined in the State of Arkansas as it comes from the mine and before it is passed over a screen of any kind." The act provides:

"Sec. 1. It shall be unlawful for any mine owner, lessee, or operator of coal mines in this State, where ten or more men are employed underground, employing miners at bushel or ton rates, or other quantity, to pass the output of coal mined by said miners over any screen or any other device which shall take any part from the value thereof before the same shall have been weighed and duly credited to the employé sending the same to the surface and accounted for at the legal rate of weights fixed by the laws of Arkansas, and no employé within the meaning of this act shall be deemed to have waived any right accruing to him under this section by any contract he may make contrary to the provisions thereof, and any provisions, contract, or agreement between mine owners, lessees, or operators thereof, and the miners employed therein, whereby the provisions of this act are waived, modified or annulled shall be void and of no effect, and the coal sent to the surface shall be accepted or rejected; and if accepted, shall be weighed in accordance with the provisions of this act, and right of action shall not be invalidated by reason of any contract or agreement; and any owner, agent, lessee or operator of any coal mine in this State, where ten or more men are employed underground, who shall knowingly violate any of the provisions of this section shall be deemed guilty of a misdemeanor, and upon conviction shall be punished by a fine of not less than two hundred dollars nor more than five hundred dollars for each offense, or by imprisonment in the county jail for a period of not less than sixty days nor more than six months, or both such fine and imprisonment; and each day any mine or mines are operated thereafter shall be a separate and distinct offense; proceedings to be instituted in any court having competent jurisdiction." Acts 1905, c. 219, § 1.

The case was tried upon an agreed statement of facts, as follows:

"That the Bolen-Darnall Coal Company is a corporation organized and existing under the laws of the State of Missouri, and is also doing business under the laws of the State of Arkansas, and has complied with the laws of Arkansas permitting foreign corporations to transact and do business within said State.

"It is further agreed that John McLean, defendant, is the managing agent of the said Bolen-Darnall Coal Company, and as such has charge of the coal mine of said company situated near Hartford, in Sebastian County, Arkansas.

"It is further agreed that the said Bolen-Darnall Coal Company employs more than ten men to work underground in its mine situated near Hartford, of which the said John McLean is agent and manager.

"It is further agreed that the said Bolen-Darnall Coal Company, by and through said John McLean, as its agent and manager, did on the 19th day of June, 1906, in Greenwood District of said Sebastian County employ one W. H. Dempsey and others, coal miners, to mine coal underground in said mine by the ton at the rate and price of 90 cents per ton for screened coal, and that the said John McLean in the said district and county did knowingly pass the output of coal, so mined and sent up from underground by the said W. H. Dempsey and others, over a screen according to and as provided by a contract between it and the said Dempsey and others, and paid the said Dempsey and others for only the coal that passed over said screen, according to and as provided under the contract and paid or allowed them nothing for the coal which passed through said screen, part of the value of said coal having passed through said screen, which part of said coal was not weighed or accredited to the said Dempsey and others, and for which they received no pay; said coal not having been weighed or accredited to the said Dempsey or others before the same was passed over said screen, as provided for by the statutes of Arkansas.

"It is further agreed that more than ten men were employed and did work under said employment underground in mining

coal for the said Bolen-Darnall Coal Company in said mine aforesaid at said time; and it is also agreed that there are coal mines in said State and county operated by both corporations and individuals in which less than ten men are employed underground by the ton and bushel rates.

"It is further agreed that the said John McLean did violate the provisions of section 1, Act No. 219, duly passed by the legislature of Arkansas in 1905, which law went into operation and became effective on the 1st day of April, 1906, as hereinabove set out, and the only question herein raised being the validity of said act of the legislature aforesaid, under the law and facts herein."

The objections to the judgment of the state Supreme Court of a constitutional nature are twofold: First, that the statute is an unwarranted invasion of the liberty of contract secured by the Fourteenth Amendment of the Constitution of the United States; second, that the law being applicable only to mines where more than ten men are employed, is discriminatory, and deprives the plaintiff in error of the equal protection of the laws within the inhibition of the same Amendment.

That the Constitution of the United States, in the Fourteenth Amendment thereof, protects the right to make contracts for the sale of labor, and the right to carry on trade or business against hostile state legislation, has been affirmed in decisions of this court, and we have no disposition to question those cases in which the right has been upheld and maintained against such legislation. *Allgeyer* v. *Louisiana,* 165 U. S. 578; *Adair* v. *United States,* 208 U. S. 161. But in many cases in this court the right of freedom of contract has been held not to be unlimited in its nature, and when the right to contract or carry on business conflicts with laws declaring the public policy of the State, enacted for the protection of the public health, safety or welfare, the same may be valid, notwithstanding they have the effect to curtail or limit the freedom of contract. It would extend this opinion beyond reasonable limits to make reference to all the cases in this court in which quali-

fications of the right of freedom of contract have been applied and enforced. Some of them are collected in *Holden* v. *Hardy,* 169 U. S. 366, in which it was held that the hours of work in mines might be limited.

In *Knoxville Iron Co.* v. *Harbison,* 183 U. S. 13, it was held that an act of the legislature of Tennessee, requiring the redemption in cash of store orders or other evidences of indebtedness issued by employers in payment of wages due to employés, did not conflict with any provisions of the Constitution of the United States protecting the right of contract.

In *Frisbie* v. *United States,* 157 U. S. 160, the act of Congress prohibiting attorneys from contracting for a larger fee than $10.00 for prosecuting pension claims was held to be a valid exercise of police power.

In *Soon Hing* v. *Crowley,* 113 U. S. 703, a statute of California, making it unlawful for employés to work in laundries between the hours of 10 P. M. and 6 A. M., was sustained.

The statute fixing maximum charges for the storage of grain, and prohibiting contracts for larger amounts, was held valid. *Munn* v. *People of Illinois,* 94 U. S. 113.

In *Patterson* v. *Bark Eudora,* 190 U. S. 169, this court held that an act of Congress making it a misdemeanor for a shipmaster to pay a sailor any part of his wages in advance was valid.

In *Gundling* v. *Chicago,* 177 U. S. 183, this court summarized the doctrine as follows:

"Regulations respecting the pursuit of a lawful trade or business are of very frequent occurrence in the various cities of the country, and what such regulations shall be and to what particular trade, business or occupation they shall apply are questions for the State to determine, and their determination comes within the proper exercise of the police power by the State, and unless the regulations are so utterly unreasonble and extravagant in their nature and purpose that the property and personal rights of the citizen are unnecessarily, and in a manner wholly arbitrary, interfered with or destroyed

without due process of law, they do not extend beyond the power of the State to pass, and they form no subject for Federal interference."

In *Jacobson* v. *Massachusetts*, 197 U. S. 11, this court said:

"The liberty secured by the Constitution of the United States to every person within its jurisdiction does not import absolute right in each person to be at all times, and in all circumstances, wholly freed from restraint. There are manifold restraints to which every person is necessarily subject for the common good."

It is then the established doctrine of this court that the liberty of contract is not universal, and is subject to restrictions passed by the legislative branch of the Government in the exercise of its power to protect the safety, health and welfare of the people.

It is also true that the police power of the State is not unlimited, and is subject to judicial review, and when exerted in an arbitrary or oppressive manner such laws may be annulled as violative of rights protected by the Constitution. While the courts can set aside legislative enactments upon this ground, the principles upon which such interference is warranted are as well settled as is the right of judicial interference itself.

The legislature being familiar with local conditions is, primarily, the judge of the necessity of such enactments. The mere fact that a court may differ with the legislature in its views of public policy, or that judges may hold views inconsistent with the propriety of the legislation in question, affords no ground for judicial interference, unless the act in question is unmistakably and palpably in excess of legislative power. *Jacobson* v. *Massachusetts*, 197 U. S. 11; *Mugler* v. *Kansas*, 123 U. S. 623; *Minnesota* v. *Barber*, 136 U. S. 313, 320; *Atkin* v. *Kansas*, 191 U. S. 207, 223.

If the law in controversy has a reasonable relation to the protection of the public health, safety or welfare it is not to be set aside because the judiciary may be of opinion that the act will fail of its purpose, or because it is thought to be an

unwise exertion of the authority vested in the legislative branch of the Government.

We take it that there is no dispute about the fundamental propositions of law which we have thus far stated; the difficulties and differences of opinion arise in their application to the facts of a given case. Is the act in question an arbitrary interference with the right of contract, and is there no reasonable ground upon which the legislature, acting within its conceded powers, could pass such a law? Looking to the law itself, we find its curtailment of the right of free contract to consist in the requirement that the coal mined shall not be passed over any screen where the miner is employed at quantity rates, whereby any part of the value thereof is taken from it before the same shall have been weighed and credited to the employé sending the same to the surface, and the coal is required to be accounted for according to the legal rate of weights as fixed by the law of Arkansas, and contracts contrary to this provision are invalid. This law does not prevent the operator from screening the coal before it is sent to market; it does not prevent a contract for mining coal by the day, week or month; it does not prevent the operator from rejecting coal improperly or negligently mined and shown to be unduly mingled with dirt or refuse. The objection upon the ground of interference with the right of contract rests upon the inhibition of contracts which prevent the miner employed at quantity rates from contracting for wages upon the basis of screened coal instead of the weight of the coal as originally produced in the mine.

If there existed a condition of affairs concerning which the legislature of the State, exercising its conceded right to enact laws for the protection of the health, safety or welfare of the people, might pass the law, it must be sustained; if such action was arbitrary interference with the right to contract or carry on business, and having no just relation to the protection of the public within the scope of legislative power, the act must fail.

While such laws have not been uniformly sustained when

brought before the state courts, the legislatures of a number of the States have deemed them necessary in the public interests. Such laws have been passed in Illinois, West Virginia, Colorado, and perhaps in other States. In Illinois they have been condemned as unconstitutional. *Ramsey* v. *People*, 142 Illinois, 380. The same conclusion has been reached in Colorado, citing and following the Illinois case, *In re House Bill No. 203*, 21 Colorado, 27.

In West Virginia, while at first sustained by a unanimous court, such an act was afterwards, upon rehearing, maintained by a divided court. *Peel Splint Coal Co.* v. *State of West Virginia*, 36 W. Va. 802.

We are not disposed to discuss these state cases. It is enough for our present purpose to say that the legislative bodies of the States referred to, in the exercise of the right of judgment conferred upon them, have deemed such laws to be necessary.

Conditions which may have led to such legislation were the subject of very full investigation by the industrial commission authorized by Congress by the act of June 18, 1898, c. 466, 30 Stat. 476. Volume 12 of the report of that commission is devoted to the subject of "Capital and Labor Employed in the Mining Industry." In that investigation, as the report shows, many witnesses were called and testified concerning the conditions of the mining industry in this country, and a number of them gave their views as to the use of screens as a means of determining the compensation to be paid operatives in coal mines. Differences of opinion were developed in the testimony. Some witnesses favored the "run of the mine" system, by which the coal is weighed and paid for in the form in which it is originally mined; others thought the screens useful in the business, promotive of skilled mining, and that they worked no practical discrimination against the miner. A number of the witnesses expressed opinions, based upon their experience in the mining industry, that disputes concerning the introduction and use of screens had led to frequent and sometimes heated controversies between the operators and the miners. This condition was

testified to have been the result, not only of the introduction of screens as a basis of paying the miners for screened coal only, but after the screens had been introduced differences had arisen because of the disarrangement of the parts of the screen, resulting in weakening it or in increasing the size of the meshes through which the coal passed, thereby preventing a correct measurement of the coal as the basis of paying the miner's wages.

We are unable to say, in the light of the conditions shown in the public inquiry referred to, and in the necessity for such laws, evinced in the enactments of the legislatures of various States, that this law had no reasonable relation to the protection of a large class of laborers in the receipt of their just dues and the promotion of the harmonious relations of capital and labor engaged in a great industry in the State.

Laws tending to prevent fraud and to require honest weights and measures in the transaction of business have frequently been sustained in the courts, although in compelling certain modes of dealing they interfere with the freedom of contract. Many cases are collected in Mr. Freund's book on "Police Power," § 274, wherein that author refers to laws which have been sustained, regulating the size of loaves of bread when sold in the market; requiring the sale of coal in quantities of 500 pounds or more, by weight; that milk shall be sold in wine measure, and kindred enactments.

Upon this branch of the case it is argued for the validity of this law that its tendency is to require the miner to be honestly paid for the coal actually mined and sold. It is insisted that the miner is deprived of a portion of his just due when paid upon the basis of screened coal, because while the price may be higher, and theoretically he may be compensated for all the coal mined in the price paid him for screened coal, that practically, owing to the manner of the operation of the screen itself, and its different operation when differently adjusted, or when out of order, the miner is deprived of payment for the coal which he has actually mined. It is not denied that the

coal which passes through the screen is sold in the market. It is not for us to say whether these are actual conditions. It is sufficient to say that it was a situation brought to the attention of the legislature, concerning which it was entitled to judge and act for itself in the exercise of its lawful power to pass remedial legislation.

The law is attacked upon the further ground that it denies the equal protection of the law, in that it is applicable only to mines employing ten or more men. This question is closely analogous to one that was before this court in the case of *St. Louis Consolidated Coal Co.* v. *Illinois,* 185 U. S. 203, wherein an inspection law of the State was argued to be clearly unconstitutional by reason of its limitation to mines where more than five men are employed at any one time, and in that case, as in this, it was contended that the classification was arbitrary and unreasonable, that there was no just reason for the discrimination. Of that contention this court said (185 U. S. 207):

"This is a species of classification which the legislature is at liberty to adopt, provided it is not wholly arbitrary or unreasonable, as it was in *Cotting* v. *Kansas City Stock Yards Co.,* 183 U. S. 79, in which an act defining what should constitute public stock yards and regulating all charges connected therewith was held to be unconstitutional, because it applied only to one particular company, and not to other companies or corporations engaged in a like business in Kansas, and thereby denied to that company the equal protection of the laws. In the case under consideration there is no attempt arbitrarily to select one mine for inspection, but only to assume that mines, which are worked upon so small a scale as to require only five operators, would not be likely to need the careful inspection provided for the larger mines, where the workings were carried on upon a larger scale or at a greater depth from the surface, and where a much larger force would be necessary for their successful operation. It is quite evident that a mine which is operated by only five men could scarcely have passed the experimental stage, or that the cautions necessary in the opera-

tion of coal mines of ordinary magnitude would be required in such cases. There was clearly reasonable foundation for discrimination here."

This language is equally apposite in the present case. There is no attempt at unjust or unreasonable discrimination. The law is alike applicable to all mines in the State employing more than ten men underground. It may be presumed to practically regulate the industry when conducted on any considerable scale. We cannot say that there was no reason for exempting from its provisions mines so small as to be in the experimental or formative state and affecting but few men, and not requiring regulation in the interest of the public health, safety or welfare. We cannot hold, therefore, that this law is so palpably in violation of the constitutional rights involved as to require us, in the exercise of the right of judicial review, to reverse the judgment of the Supreme Court of Arkansas, which has affirmed its validity. The judgment of that court is

*Affirmed.*

Dissenting: MR. JUSTICE BREWER and MR. JUSTICE PECK-HAM.