[No. 2050]

## JOHN W. LAWSON, RESPONDENT, *v.* HALIFAX-TONOPAH MINING COMPANY, APPELLANT.

1. MASTER AND SERVANT — LIABILITY FOR INJURIES — RELEASE OF LIABILITY—"INDEMNITY."

 Under Rev. Laws, sec. 5652, providing that no contract of employment, insurance, relief benefit, or indemnity for injury or death entered into by or on behalf of any employee, nor acceptance of any insurance, relief benefit, or indemnity by the person entitled thereto, shall constitute a defense to an action for personal injuries or death, a release of an employer from liability for personal injuries, damaging an employee in the sum of about $1,200, in consideration of the payment of $36, did not prevent a recovery of such damages, since the statute invalidates defenses based, not only on contracts made to cover future injuries, but defenses based upon acceptance of insurance, relief benefit, or indemnity by a person already injured, and the word "indemnity" means protection or exemption from loss or damage, past or to come, or immunity from punishment for past offenses.

2. CONSTITUTIONAL LAW — MASTER AND SERVANT — LIABILITY FOR INJURIES—RELEASE OF LIABILITY—STATUTORY PROVISIONS.

 Such section is not unconstitutional, since the legislature has power to enact laws to promote healthful conditions of work or freedom from undue oppression; and a contract which the state, in the legitimate exercise of its police power, has the right to prohibit is not within the protection of Const. U. S. Amend. 14, prohibiting the states from depriving any person of liberty or property without due process of law, especially in view of the further provision of that section that upon the trial of an action the defendant may set off the sum it has contributed toward any such insurance, relief benefit, or indemnity that may have been paid to the person entitled thereto.

NORCROSS, J., dissenting.

APPEAL from the Fifth Judicial District Court, Nye County; *Mark R. Averill*, Judge.

Action by John W. Lawson against the Halifax-Tonopah Mining Company. From an order sustaining a demurrer to the answer, and from a judgment for plaintiff, defendant appeals. **Affirmed. Rehearing denied.**

The facts sufficiently appear in the opinion.

*Bartlett & Thatcher*, for Appellant:

There was a valid agreement in settlement for the injuries sustained by the plaintiff entered into after

the injury. The provisions of the state "Employers' Liability Act" of 1907 does not affect contracts of settlement entered into after injury. (*Akenson* v. *Railroad Co.*, 75 N. W. 676; *Donald* v. *R. R. Co.*, 93 Iowa, 284, 33 L. R. A. 492; *Maine* v. *R. R. Co.*, 109 Iowa, 260; *McGuire* v. *R. R. Co.*, 131 Iowa, 340, 108 N.W. 902, 33 L. R. A. n.s. 706; *McNamara* v. *Washington T. Co.*, 35 App. D. C. 230; *Mondou* v. *N. Y., N. H. & H.*, 223 U. S. 1; *P. B. & W. R. Co.* v. *Schubert*, 224 U. S. 603; 36 Cyc. 1178, 1179.)

Any other construction would render the section unconstitutional as an unwarranted and unreasonable restriction upon the liberty of contract guaranteed by the fourteenth amendment. (*Williams* v. *Fears*, 179 U. S. 270; *Allgeyer* v. *Louisiana*, 165 U. S. 578; *Block* v. *Schwartz*, 27 Utah, 387; *Henry* v. *Cherry*, 30 R. I. 38; *School Corp.* v. *Heiney*, 98 N. E. 628; *People* v. *Steele*, 231 Ill. 340; *State* v. *Goodwill*, 33 W. Va. 179; *Ex Parte Drexel*, 147 Cal. 763; *Goldfield Con. M. Co.* v. *Goldfield Miners' Union*, 159 Fed. 513-517; *Adair* v. *U. S.*, 208 U. S. 174-5; *Lockner* v. *N. Y.*, 198 U. S. 53; *People* v. *Marcus*, 185 N. Y. 259; *State* v. *Julow*, 129 Mo. 163; *State* v. *Kreutzberg*, 114 Wis. 540; *Gillespie* v. *People*, 188 Ill. 176; *Young* v. *Commonwealth*, 101 Va. 853.)

*Geo. B. Thatcher*, for Appellant, on petition for rehearing.

*H. R. Cooke*, for Respondent:

The plain purport and purpose of the law is to prevent contracts for or acceptance of indemnity or money payment from constituting an absolute bar to an action, and to leave it open for the employee to avail himself of the courts if he so desired.

Against the plain language of the statute argument is superfluous and useless, unless, indeed, it is intended to obtain a judicial repeal of the statute. The act contemplates putting an end to just such defenses as respondent met with in the case at bar. Had the Nevada legislature intended the act to mean what counsel say it means, they would have used the same language that the Iowa statute uses.

Liberty of contract is not a universal right and may be abridged when required for the public good. (*McLean* v. *Arkansas*, 211 U. S. 539; *Railway Co.* v. *Beckwith*, 129 U. S. 26; *People* v. *Erie Ry. Co.*, 29 L. R. A. 240; *Leep* v. *St. Louis R. Co.*, 23 L. R. A. 264; *Peel Co.* v. *State*, 17 L. R. A. 385; *Holden* v. *Hardy*, 169 U. S. 366; *Harbison* v. *Knoxville Co.*, 56 L. R. A. 316, 183 U. S. 13; *Brakebill* v. *Chicago Ry. Co.*, 131 Pac. 540; *Kilpatrick* v. *Ry. Co.*, 93 Am. St. Rep. 887; *Int. Text Book Co.* v. *Weisenger*, 65 L. R. A. 599; *McLean* v. *State*, 211 U. S. 539; *Hopper* v. *State*, 155 U. S. 648; *Patterson* v. *The Endora*, 190 U. S. 169; *Philadelphia* v. *Schubert*, 224 U. S. 603.)

*Henry M. Hoyt* and *L. A. Gibbons* were permitted, as *amici curiæ*, to file a brief in support of the petition for a rehearing, from which the following extract is taken:

We concede great powers to the state under the vague term "police power." Yet we say the courts, both state and federal, have at all times been watchful to prevent the invasion by legislative authority of natural contractual functions necessary to the freedom of men. Restraints imposed upon man's natural activities and intelligent, self-reliant conduct in the living of his life must rest upon reasons which bear some direct relation to the common welfare, in order to obtain judicial sanction. (*Kuhn* v. *Detroit*, 70 Mich. 534; *Hume* v. *Laurel Hill Cem.*, 142 Fed. 563; *State* v. *Robins*, 73 N. E. 470; *George Boller Co.* v. *North Platte V. Irr. Co.*, 121 Pac. 22; *State* v. *Daniels*, 136 N. W. 584; *Amer. Surety Co.* v. *Shallenberger*, 183 Fed. 636; *Dennis* v. *Moses*, 52 Pac. 333; *Ex Parte Jentzsch*, 112 Cal. 468.)

By the Court, McCARRAN, J.:

This action grew out of injuries sustained by the respondent while in the employ of the appellant corporation, in the sinking of a mining shaft. The complaint in this cause sets forth that the respondent was injured while descending the shaft of appellant in a mining bucket, in pursuance of his employment in bailing water

from the bottom of the shaft. The respondent was 29 years of age, and had been earning wages as a miner at the rate of $5 a day. The injuries, as set forth in the complaint, were of a more or less serious nature, and it is alleged that defendant, by reason of the injuries, is incapacitated from performing ordinary manual labor, and, further, that he suffered numerous and severe hemorrhages and continued physical pain. The respondent in this case admits in his complaint the receipt of $36 from appellant.

This action was brought under the employers' liability act of this state, and a credit, or set-off, was admitted and allowed by respondent to appellant in the sum of $36, and respondent prayed for judgment in the sum of $1,964.

A demurrer, submitted by the appellant, was overruled by the trial court, following which order the appellant filed its answer, in which answer the appellant set up, among other things, the following allegation in support of its affirmative defense: "That plaintiff ought not and should not have or maintain his cause of action, for on account of the facts set forth in his said complaint, for in that at Tonopah, Nye County, State of Nevada, the said plaintiff, for and in consideration of the sum of $36 to him in hand paid by said defendant in full accord and satisfaction of the facts set forth in plaintiff's complaint, and of the injury complained of therein, made, executed, and delivered to defendant that certain instrument in writing in full of all account and claims of and for and on account of the pretended facts set forth in plaintiff's complaint and in accord, relinquishment and satisfaction thereof as follows, to wit: 'Tonopah, Nevada, November 18, 1911. Received of the Halifax-Tonopah Mining Company the sum of seventy-six dollars, being in full of all account and claims of and for any injury heretofore sustained by the undersigned, while in the employ of the Halifax-Tonopah Mining Company and the undersigned, for and in consideration of the sum of seventy-six dollars does forever release and discharge said Halifax-Tonopah

Mining Company, of and from any and all claims of damages therefor, and does hereby release and discharge any and all claims of every nature, from the beginning of the world to the date of these presents, he may have or claim against said Halifax-Tonopah Mining Company. Jack Lawson.' "

Of the sum specified in the foregoing receipt $40 was paid respondent by appellant as wages for services actually performed, and the remainder of the sum, amounting to $36, was paid the respondent by appellant on account of his injuries. To this answer, and especially to that phase of the answer quoted above, respondent demurred on the ground that the affirmative defense did not state facts sufficient to constitute any defense to respondent's cause of action. This demurrer, on the part of the respondent, was sustained by the trial court, and ten days allowed appellant for amendment. To the ruling of the court in this respect the appellant excepted, and by notice duly given, through its attorney, declined to amend the answer. Thereafter the cause was heard before the trial court without the assistance of a jury, and a decision was rendered in favor of respondent, and judgment entered against the appellant in the sum of $1,174 and costs. From the order sustaining respondent's demurrer to appellant's answer, and from the judgment rendered in the cause, appeal is taken to this court.

**1, 2.** Section 5652 of the Revised Laws of the State of Nevada, applicable to the subject of personal injuries, is as follows: "That no contract of employment, insurance, relief benefit, or indemnity for injury or death, entered into by or on behalf of any employee, nor the acceptance of any insurance, relief benefit, or indemnity by the person entitled thereto, shall constitute any bar or defense to any action brought to recover damages for personal injuries to, or death of such employee; *provided, however,* that upon the trial of such action the defendant may set off therein any sum it has contributed toward any such insurance, relief benefit, or indemnity that may have been paid to the person entitled thereto."

One question alone is to be decided by this court, viz:
Was the receipt given by Jack Lawson, the respondent,
to the Halifax-Tonopah Mining Company, the appellant,
for the sum of $36, in full of all account and claims of
and for any injuries sustained by respondent, such an
acceptance as is contemplated by the inhibitions of
section 5652 of the statute quoted above? In the con-
sideration of this question, however, a secondary propo-
sition is presented and raised by appellant, viz, the
constitutionality of the section set forth.

The employers' liability act, of which the foregoing
section is a part, was enacted by our legislature in 1907,
and by the enactment of this statute common carriers
and mill and mine owners were made liable to their
employees in case of injury, or to the personal repre-
sentative of their employees in case of death, where the
injury or death was the result of negligence of the
officers, agents, or employees of the common carrier, or
mill or mine operator. By the enactment of this statute
this state, speaking through its legislature—the repre-
sentatives of its people—declared its policy applicable to
this all-important subject. By this statute the common-
law rule of fellow servants was modified, and, moreover,
the common-law rule of contributory negligence was
superseded by the statutory rule, which is more or less
properly termed the rule of "relative" or "comparative"
negligence. In enacting section 5652, the object and
purpose of the legislature was manifest and obvious, and
the meaning of the words therein contained is to our
mind in no wise obscure. By its enactment the legis-
lature manifestly sought to avoid the various and devious
contracts and agreements so often required by employers
as a condition precedent to the obtaining of employment,
and also to guard against the many and devious ways by
which employers seek to avoid the consequences of their
own acts, or the acts of their agents, by obtaining releases
therefrom by the signing of instruments at the hands
of the injured party tending to establish a settlement.
Section 2071 of the code of the State of Iowa, dwelling

upon a similar subject, is as follows: "Every corporation operating a railway shall be liable for all damages sustained by any person, including the employees of such corporation, in consequence of the neglect of the agents, or by any mismanagement of the engineers or other employees thereof, and in consequence of the wilful wrongs, whether of commission or omission, of such agents, engineers, or other employees, when such wrongs are in any manner connected with the use and operation of any railway on or about which they shall be employed, and no contract which restricts such liability shall be legal or binding. Nor shall any contract of insurance, relief benefit, or indemnity in case of injury or death, entered into prior to the injury, between the person so injured and such corporation, or any other person or association acting for such corporation, nor shall the acceptance of any such insurance, relief benefit, or indemnity by the person injured, his widow, heirs or legal representatives after the injury, from such corporation, person, or association, constitute any bar or defense to any cause of action brought under the provisions of this section, but nothing contained herein shall be construed to prevent or invalidate any settlement for damages between the parties subsequent to injuries received."

The code of Iowa quoted above is very analogous to our own statute, but contains a distinctive provision recognizing and sanctioning settlements for damages between the parties.

Section 5652 invalidates any defense based upon contract made to cover the contingency of future injury, and it likewise invalidates a defense based upon the acceptance of insurance, relief benefit, or indemnity accepted by reason of injury already sustained. The acceptance of any insurance, relief benefit, or indemnity must necessarily be an act of acceptance done after an injury, and hence it follows that the intendment of the statute was to make nugatory any defense based on acceptance of insurance, relief benefit, or indemnity, after

the injury, as well as any defense based on contract or agreement made or entered into prior to injury, created for the purpose of relieving the employer from his proper responsibility.

The word "indemnity" means: Protection or exemption from loss or damage past or to come. It also means: Immunities from the punishment of past offenses. One who indemnifies, or enters into a contract of indemnity, thereby agrees to save harmless. The word, generally speaking, carries with it two meanings: First, in the sense of giving security; and, second, in the sense of relieving a party from liability for damage already accrued.

Laws enacted under the police power of the state, which will in their general nature promote healthful conditions of work and freedom from undue oppression, are always within the scope of the legislative department. The health and safety of the great mass of the employed is a subject with reference to which there has been vast and varied legislation in recent years, and the true aim and object of it all has been to protect life, person, and property where persons are engaged in hazardous vocations. The various legislative acts, dwelling upon this subject in the many states, have been passed upon by the courts in numerous decisions, with the result that the courts of last resort of many states, as well as the Supreme Court of the United States, have upheld the principle that such legislation was within the police power of the state; that power being exercised to govern men and things within the limits of its dominion. It has been generally said that where the health, prosperity, good order, and peace of the people, or of any general class of the people, require legislative regulations, it is within the power of the legislature of the several states to enact such statutes.

The legislature of the State of Nevada, speaking for the policy of the people of this state, has in the past enacted many laws intended to better the conditions of the laboring class, by laying down rules and regulations in the interest of humanity, and to save the lives and

limbs and safeguard the health of workingmen. The employers' liability act, of which section 5652 is a part, is but one of the great class of legislative acts enacted for the purpose of extending humane protection to the laborer, while legitimately pursuing his vocation. In enacting this statute the legislature evidently had in mind the inequality, from the standpoint of opportunity, of the employer and the employee, and it was within the power of the legislature to take into consideration and provide against the natural tendency of the employer to exact a favorable bargain where the opportunity presents itself. It was within the power of the legislature to make nugatory any contract or agreement whereby an employee might, by entering into such agreement, destroy the safeguards which the law threw about him. (*Lochner* v. *People of State of N. Y.*, 198 U. S. 45, 25 Sup. Ct. 539, 49 L. Ed. 937, 3 Ann. Cas. 1133; *Kilpatrick* v. *Grand Trunk R. Co.*, 74 Vt. 288, 52 Atl. 531, 93 Am. St. Rep. 887.)

The state, having the power to enact laws of this general character for the protection of the life and welfare of the individual members of any class, with equal power may declare void any agreement, contract of employment, insurance, relief benefit, or indemnity entered into prior to or subsequent to the injury, the general nature of which would be to destroy the effectiveness of the act itself.

It will be observed that the statute relied upon by counsel in this case differs from that under consideration in the case of *McGuire* v. *C. B. & Q. R. Co.*, 131 Iowa, 340, 108 N. W. 902, 33 L. R. A. n.s. 706, cited by appellant, in that the Iowa statute makes special provision for settlement for damages between the parties subsequent to the injury. In this respect it may be observed that if these safeguards of legislation, enacted for the purpose of enforcing a policy, may be valid in nullifying contracts entered into prior to accident or injury, if legislative enactment may be valid to prevent an individual from entering into a contract while in full possession of his

health, strength, and faculties, how much more should their validity be upheld when they operate to safeguard and protect one who, by reason of accident or calamity occasioned by the very nature of his employment, is suddenly cast into suffering and privation? If public policy and public health demand that the employee be protected against himself when he is in full enjoyment of all the faculties with which nature has endowed him, and when those dependent upon him are receiving the full measure of his labor and ability, in our judgment it cannot be successfully argued that the same protection should not apply to him when, stricken down with some catastrophe in the course of his vocation, he finds himself deprived of the power to either support himself or provide for those dependent upon him.

The power of the state to prevent the individual from making certain kinds of contracts has been passed upon approvingly by many of the courts of last resort, and it has been generally said that if the contract be one which the state, in the legitimate exercise of its police power, has the right to prohibit, it is not prevented from prohibiting it by the fourteenth amendment. The rule has been laid down in state jurisdictions, as well as by the Supreme Court of the United States, that contracts in violation of the statute, either of the federal or of a state government, could obtain no protection from the federal constitution as coming under the amendment bearing upon the subject of liberty of person and of free contract. When a state by its legislature, assuming to exercise under its police power, passes an act which in its general scope protects the health or welfare of the individual members of any general class, it has the right to enact legislation prohibiting contracts the general nature of which would be to prevent the operation of the law. (*McNamara* v. *Washington Terminal Co.*, 35 App. D. C. 230.)

We think it unnecessary in this case to dwell upon the inadequacy of the consideration as represented by the receipt given by respondent to appellant and set forth herein. It is our judgment that it was the intention of

the legislature to provide against just such instruments as that which presents itself in this case in the receipt or acceptance signed by respondent, wherein inadequacy is manifest and whereby the employer, by the payment of a mere pittance, seeks to avoid the just consequences of his own wrongful act. The purpose of the statute is to prevent such an acceptance operating as an absolute bar to an action; the object being to have the question of the amount of damages ascertained and determined by judicial calculations governed by legal principles and limited by equitable rules.

By the provisions of the statute any sum contributed toward the relief or indemnity of the party injured constitutes a set-off or a credit to the employer. It follows that the amount contributed would be deducted from any judgment that might be awarded to the injured person, and hence, in our judgment, the employer is deprived of no legal right or benefit by the inhibition of the statute.

In view of the foregoing reasoning it is our judgment that the respondent's demurrer to appellant's answer should have been sustained, as it was sustained by the trial court. No question is raised by appellant as to the evidence warranting the court in making the findings and entering the judgment for the sum specified.

It therefore follows that the order and judgment appealed from should be affirmed.

It is so ordered.

TALBOT, C. J., concurring:

I concur in the opinion written by Justice McCARRAN. Section 5652 of the Revised Laws quoted is a copy of section 3 of the liability act passed by Congress in 1906 (Act of June 11, 1906, c. 3073, 34 Stat. 232, U. S. Comp. St. Supp. 1911, p. 1317), except that the limitation to common carriers in the federal statute does not appear in our act. Section 3 of the act of Congress of 1908 (Act of April 22, 1908, c. 149, 35 Stat. 66, U. S. Comp. St. Supp. 1911, p. 1323), contains substantially the same provisions relating to common carriers engaged in interstate commerce.

Florida in 1906, Wisconsin in 1907, Michigan and Texas in 1909, and California, Montana, and Nebraska in 1911 passed acts providing that no contract restricting liability of the employer should be legal or binding, and these statutes in Montana, Nebraska, Michigan, Arizona, and Texas are substantially the same as our own and the federal act. The validity of such laws has not been determined by the courts of last resort in the most of the states in which they have been so recently passed, but attacks upon statutes relating to employer and employee have often been made on the ground that they were unconstitutional as infringing upon the right of contract. In some of the earlier decisions there was a failure to consider the extent of the jurisdiction of the legislature to enact laws for the protection, safety, and welfare of employees engaged in hazardous occupations, or to discern the meander line between the sphere of legislation and the liberty of contract.

Among the earlier cases relating to statutes invalidating such contracts, the few which held such laws to be unconstitutional have been criticized or overruled. It was urged that our statute providing an eight-hour day for men working in mines, smelters, and ore-reduction plants was unconstitutional because it deprived the employer and employee of the right of contracting for a longer workday. Notwithstanding this and other objections, this court and the Supreme Court of the United States held that such an act was valid, and that under the police power the legislature could enact laws for the protection and welfare of men so employed. (*Ex Parte Boyce*, 27 Nev. 299, 65 L. R. A. 47, 1 Ann. Cas. 66; *Ex Parte Kair*, 28 Nev. 127, 113 Am. St. Rep. 817, 6 Ann. Cas. 893; *Holden* v. *Hardy*, 169 U. S. 366, 18 Sup. Ct. 383, 42 L. Ed. 780.)

In *Baltimore & Ohio R. R. Co.* v. *Interstate Commerce Commission*, 221 U. S. 612, 31 Sup. Ct. 621, 55 L. Ed. 878, the act of Congress of March 4, 1907 (Act of March 4, 1907, c. 2939, 34 Stat. 1415, U. S. Comp. St. Supp. 1911, p. 1321), regulating the hours of labor of railroad employees engaged in interstate commerce, was held to be constitutional and not an interference with the liberty of

contract.  In *Michigan Cent. R. R.* v. *Vreeland,* 227 U. S.
66, 33 Sup. Ct. 192, 194, 57 L. Ed. 417, referring to the fed-
eral employees' liability act, the court said: " 'The sub-
ject,' as observed by this court in *Mondou* v. *Railroad
Co.,* 223 U. S. 1, 54, 32 Sup. Ct. 169, 56 L. Ed. 327, 38 L.
R. A. n.s. 44, is one which falls within the police power
of the state, in the absence of legislation by Congress.'
(*Nashville, C. & St. L. Ry. Co.* v. *Alabama,* 128 U. S. 96,
99, 9 Sup. Ct. 28, 32 L. Ed. 352.)"

It being settled that the legislature may determine the
best public policy regarding employees in quartz mines,
smelters, and ore-reduction plants, and pass laws for
their benefit and protection, it necessarily follows that
any right of contract must yield to statutes passed for
these humane purposes.  There are numerous decisions
holding that conditions of contracts upon telegrams,
railroad tickets, and bills of lading are void as against
public policy.  Statutes have been sustained which make
it unlawful to contract to pay miners at quantity rates
upon screened coal instead of upon the original weight
of the coal as produced in the mine (*McLean* v. *Arkan-
sas,* 211 U. S. 539, 29 Sup. Ct. 206, 53 L. Ed. 315), and
prohibiting contracts for options on grain or other com-
modities at a future time (*Booth* v. *Illinois,* 184 U. S. 425,
22 Sup. Ct. 425, 46 L. Ed. 623).

It has also been held by the Supreme Court of the
United States that the Carmack amendment (Act of
June 29, 1906, c. 3591, sec. 7, 34 Stat. 593, U. S. Comp. St.
Supp. 1911, p. 1307), by which an interstate carrier vol-
untarily receiving property for transportation is made
liable to the holder of the bill of lading for loss anywhere
en route, notwithstanding any agreement to the contrary,
with right of recovery over against the carrier actually
causing the loss, is not unconstitutional as infringing the
liberty of contract. (*Atlantic Coast Line R. R. Co.* v.
*Riverside Mills,* 219 U. S. 186, 31 Sup. Ct. 164, 55 L. Ed.
167, 31 L. R. A. n.s. 7.)

The question of the constitutionality of legislation
invalidating contracts which provide for release from
liability for damages is answered most clearly by the

opinion of the Supreme Court of the United States
written by Justice Hughes, sustaining the Iowa statute
(*C., B. & Q. R. R. Co.* v. *McGuire,* 219 U. S. 564, 31
Sup. Ct. 261, 55 L. Ed. 328), in which it is said: "This
section of the code of Iowa (2071), as originally enacted,
imposed liability upon railroad corporations for injuries
to employees, although caused by the negligence or mis-
management of fellow servants.  And it was held by
this court that it was clearly within the competency
of the legislature to prescribe this measure of responsi-
bility.  (*Minneapolis & St. Louis Railway Co.* v. *Herrick,*
127 U. S. 210, 8 Sup. Ct. 1176, 32 L. Ed. 109, following
*Missouri Railway Co.* v. *Mackey,* 127 U. S. 205, 8 Sup. Ct.
1161, 32 L. Ed. 107.)  The statute in its original form
also provided that 'no contract which restricts such lia-
bility shall be legal or binding.'  *  *  *  It has been
held that the right to make contracts is embraced in the
conception of liberty as guaranteed by the constitution.
(*Allgeyer* v. *Louisiana,* 165 U. S. 578, 17 Sup. Ct. 427, 41
L. Ed. 832; *Lochner* v. *New York,* 198 U. S. 45, 25 Sup. Ct.
539, 49 L. Ed. 137, 3 Ann. Cas. 1133; *Adair* v. *United States,*
208 U. S. 161, 28 Sup. Ct. 277, 52 L. Ed. 436, 13 Ann. Cas.
764.)  In *Allgeyer* v. *Louisiana, supra,* the court, in refer-
ring to the fourteenth amendment, said: 'The liberty men-
tioned in that amendment means, not only the right of the
citizen to be free from the mere physical restraint of his
person, as by incarceration, but the term is deemed to
embrace the right of the citizen to be free in the enjoy-
ment of all his faculties; to be free to use them in all
lawful ways; to live and work where he will; to earn his
livelihood by any lawful calling; to pursue any livelihood
or vocation, and for that purpose to enter into all con-
tracts which may be proper, necessary, and essential to
his carrying out to a successful conclusion the purposes
above mentioned.'  But it was recognized in the cases
cited, as in many others, that freedom of contract is a
qualified and not an absolute right.  There is no absolute
freedom to do as one wills or to contract as one chooses.
The guaranty of liberty does not withdraw from legis-
lative supervision that wide department of activity

which consists of the making of contracts, or deny to government the power to provide restrictive safeguards. Liberty implies the absence of arbitrary restraint, not immunity from reasonable regulations and prohibitions imposed in the interests of the community. (*Crowley* v. *Christensen*, 137 U. S. 89, 11 Sup. Ct. 13, 34 L. Ed. 620; *Jacobson* v. *Massachusetts*, 197 U. S. 11, 25 Sup. Ct. 358, 49 L. Ed. 643, 3 Ann. Cas. 765.) 'It is within the undoubted power of government to restrain some individuals from all contracts, as well as all individuals from some contracts. It may deny to all the right to contract for the purchase or sale of lottery tickets; to the minor the right to assume any obligations, except for the necessaries of existence; to the common carrier the power to make any contract releasing himself from negligence, and, indeed, may restrain all engaged in any employment from any contract in the course of that employment which is against public policy. The possession of this power by government in no manner conflicts with the proposition that, generally speaking, every citizen has a right freely to contract for the price of his labor, services, or property.' (*Frisbie* v. *United States*, 157 U. S. 165, 166, 15 Sup. Ct. 586, 588, 39 L. Ed. 657.) * * * It is subject also, in the field of state action, to the essential authority of government to maintain peace and security, and to enact laws for the promotion of the health, safety, morals, and welfare of those subject to its jurisdiction. * * * The principle involved in these decisions is that where the legislative action is arbitrary, and has no reasonable relation to a purpose which it is competent for government to effect, the legislature transcends the limits of its power in interfering with liberty of contract; but, where there is reasonable relation to an object within the governmental authority, the exercise of the legislative discretion is not subject to judicial review. * * * The principle was thus stated in *McLean* v. *Arkansas*, 211 U.·S. 547, 29 Sup. Ct. 206, 208, 53 L. Ed. 315: 'The legislature, being familiar with local conditions, is, primarily, the judge of the necessity of such enactments. * * * If there existed a condition of affairs concerning

which the legislature of the state, exercising its conceded right to enact laws for the protection of the health, safety, or welfare of the people, might pass the law, it must be sustained; if such action was arbitrary interference with the right to contract or carry on business, and having no just relation to the protection of the public within the scope of legislative power, the act must fail.' In dealing with the relation of employer and employee the legislature has necessarily a wide field of discretion in order that there may be suitable protection of health and safety, and that peace and good order may be promoted through regulations designed to insure wholesome conditions of work and freedom from oppression. What differences, as to the extent of this power, may exist with respect to particular employments, and how far that which may be authorized as to one department of activity may appear to be arbitrary in another, must be determined as cases are presented for decision. But it is well established that, so far as its regulations are valid, not being arbitrary or unrelated to a proper purpose, the legislature undoubtedly may prevent them from being nullified by prohibiting contracts which, by modification or waiver, would alter or impair the obligation imposed. If the legislature may require the use of safety devices, it may prohibit agreements to dispense with them. If it may restrict employment in mines and smelters to eight hours a day, it may make contracts for longer service unlawful. In such case the interference with the right to contract is incidental to the main object of the regulation, and if the power exists to accomplish the latter, the interference is justified as an aid to its exercise. * * * Here there is no question as to the validity of the regulation or as to the power of the state to impose the liability which the statute prescribes. The statute relates to that phase of the relation of master and servant which is presented by the case of railroad corporations. It defined the liability of such corporations for injuries resulting from negligence and mismanagement in. the use and operation of their railways. In the cases within its·

purview it extended the liability of the common law by abolishing the fellow-servant rule. Having authority to establish this regulation, it is manifest that the legislature was also entitled to insure its sufficiency by prohibiting contracts in derogation of its provisions. In the exercise of this power, the legislature was not limited with respect either to the form of the contract, or the nature of the consideration, or the absolute or conditional character of the engagement. It was as competent to prohibit contracts, which on a specified event, or in a given contingency, should operate to relieve the corporation from the statutory liability which would otherwise exist, as it was to deny validity to agreements of absolute waiver."

Although the Iowa act exempted settlements made after the injury was received, it is apparent that it would be fully as much within the province of the legislature to provide that contracts made after the injury should not be binding as contracts made before, and that if a statute nullifying such contracts made before injury is properly sustained, laws invalidating settlements made after the injury are not unconstitutional. The employee who is injured by defective machinery or appliances, or by some negligence for which the employer is liable, may, after the accident, be more impelled by disability which prevents him from earning his support, or by the destitution of himself or his family, or stress of circumstances, to accept in satisfaction an amount much less than the damage he has actually sustained. Equitably the statute is in accord with the decisions holding that when a solvent debtor pays only a part of the amount he owes on a clear, undisputed, liquidated demand, with a receipt or agreement that the part payment is in full, the remainder may be collected.

In *Mondou* v. *N. Y., N. H. & Hartford R. R. Co., N. P. Railway Co.* v. *Babcock,* and *N. Y., N. H. & Hartford R. R. Co.* v. *Walsh,* 223 U. S. 1, 32 Sup. Ct. 169, 56 L. Ed. 327, 38 L. R. A. n.s. 44, it was held that the act of Congress, with terms similar to ours, and which invalidates contracts

of settlement or exemption whether executed before or after the injury is received, made no unwarranted interference with the liberty of contract contrary to the provisions of the federal constitution.

The state courts are bound by the construction of the federal courts given to acts of Congress, but are not required to follow the construction given to a state statute by the federal courts, or the Supreme Court of the United States, unless a federal question is involved. The federal courts follow the construction given to a state statute by the state court of last resort, notwithstanding such construction may not be in accord with the views of the federal court. Although the decision of the Supreme Court of the United States sustaining the act of Congress relating to the liability of common carriers engaged in interstate commerce may not be conclusive or binding as to the construction of our act, which contains similar provisions relating to the liability of employers, when it does not appear that our statute is vitiated by any provision of the state constitution which is different from the requirements of the federal constitution, the opinion in that case, and the one upholding, as not in conflict with the federal constitution, the Iowa statute, which is substantially the same as ours in relation to such contracts made before injury, are entitled to the highest consideration, and, being in accord with the principles enunciated by this court and the Supreme Court of the United States sustaining the right of the legislature to enact laws for the protection and benefit of men employed in mines and ore-reduction plants as not an unwarranted encroachment upon the liberty of contract, may be regarded as adjudicating the principles which control this case, and as justifying the upholding of our statute.

NORCROSS, J.: I concur in the judgment.

ON PETITION FOR A REHEARING

The petition for a rehearing is hereby denied.

TALBOT, C. J.,<br>
McCARRAN, J.

NORCROSS, J., dissenting:

I dissent from the order denying a rehearing. The importance and far-reaching effect of the legal questions discussed and determined by the opinions of the majority members of the court warrant, in my judgment, further hearing and consideration before the views expressed in those opinions be determined to be the law.

I am unable to agree upon the construction placed by my learned associates upon section 5652 of the Revised Laws. Our statute of 1907 (Stats. 1907, p. 437) which was incorporated into the new civil practice act of 1912 (Rev. Laws, 5649-5652) is modeled after the act of Congress of June 11, 1906 (34 Stat.-at-L. 232, c. 3073, U. S. Comp. Stat. Supp. 1909, p. 1148). Section 3 of the act of 1907 (Rev. Laws, 5652) is in all essentials identical with section 4 of the federal act, *supra*. While there is no direct authority upon the question of settlements made between an injured employee and his employer after injury, the provisions of section 3 of the federal act was under consideration by the Court of Appeals of the District of Columbia in the case of *McNamara* v. *Washington Terminal Co.*, 35 App. D. C. 230.

That case involved the validity of an agreement entered into at the time of employment, which exempted the company from any liability other than was provided for in certain relief benefits agreed upon at the time of employment which were to accrue to the employee in the event of injury. It was held that this agreement was in violation of the statute, and was not a bar to further recovery.

The court, however, said: "If it [the employer] honestly desires to effect a settlement with the employee, irrespective of this contract of employment and upon a new consideration, it may do so, and such a settlement, if free from duress, will be sustained. What it here seeks to do, however, is to be relieved of liability without the payment of a new consideration. Mr. Justice Stafford, in a well-considered opinion (*Potter* v. *Baltimore & O. R. Co.*, 37 Wash. L. Rep. 466), sustaining this section, said: 'What Congress evidently intended to do was to cut up, root and

branch, this whole attempt on the part of the employer to substitute its own determination of its liability, and its own adjustment of the extent of that liability, as far as the same were embraced in the original contract of employment, and to substitute for it an adjustment in open court, or at least an adjustment by the parties, independent of such original contract.'" See, also, *Philadelphia Ry. Co.* v. *Schubert,* 224 U. S. 603.

Whether the above quotation from the opinion in the McNamara case is or is not *dicta,* I believe it to be the correct construction to be placed on the federal act, under consideration in that case, and likewise it would be the correct construction to be placed upon the statute of this state. The purpose of the act is accomplished by this construction, and any other construction would render it of doubtful constitutionality, to say the least. Both the language and the constitutionality of an act should be clear before it is held that a valid agreement in settlement for personal injuries may not be entered into between employer and employee after injury. Such a construction means that, no matter how much the parties may be desirous of effecting a settlement or how advantageous such a settlement may be, a resort must be had to litigation with its attendant delay and expense—a result which would be alike injurious to both employer and employee, with no compensating advantage. The reasons which justify the legislature in holding void agreements entered into as a condition of employment do not apply in matters of settlement after injury.

The courts have never hesitated to set aside agreements in settlement for personal injuries, where the consideration was inadequate and where the circumstances virtually prevented freedom of contract. It was upon this view of the present case that I concurred in the judgment.

I am still of the opinion that the judgment could be affirmed, notwithstanding I think the court erred in sustaining the demurrer to the answer. The fact that the plaintiff was induced to accept a grossly inadequate consideration for his injuries, shortly after the accident and

while he was still suffering therefrom and was at a clear disadvantage in entering into the contract, afforded ample warrant for refusing to enforce its provisions. If this case only involved the question of an affirmance of the judgment, I would concur in the order denying a rehearing, but, as a far greater question than the mere affirmance of the judgment is presented in the opinion of the majority members of the court, I think a rehearing should be granted.