# JANUARY TERM, 1915.

### PRESENT:

Hon. WILLIAM A. JOHNSTON, Chief Justice.
Hon. ROUSSEAU A. BURCH,
Hon. HENRY F. MASON,
Hon. CLARK A. SMITH,
Hon. SILAS W. PORTER, ⎰ Justices.
Hon. ALFRED W. BENSON,
Hon. JUDSON S. WEST,

No. 18,407.

THE STATE OF KANSAS, *Appellee*, v. PHIL REASER, *Appellant*.

#### SYLLABUS BY THE COURT.

1. COAL MINES—*Statute for Protection of Employees—Within Legislative Power.* Chapter 222 of the Laws of Kansas of 1911 was enacted in the exercise of the police power of the state to promote the health of employees in coal mines and is within the legislative power of the state.

2. SAME—*Statute for Protection of Employees—Constitutional and Valid.* The law applies to all mines of a designated class, and is not violative of the bill of rights or constitution of Kansas nor of the fourteenth amendment to the constitution of the United States because not applicable to other classes or kinds of mines.

Appeal from Crawford district court; ANDREW J. CURRAN, judge. Opinion filed January 9, 1915. Affirmed.

*C. E. Benton,* and *W. P. Dillard,* both of Fort Scott, for the appellant; *John J. Campbell,* of Pittsburg, of counsel.

*John S. Dawson,* attorney-general, and *S. N. Hawkes,* assistant attorney-general, for the appellee.

The opinion of the court was delivered by

SMITH, J.: The appellant, Phil Reaser, was charged with a misdemeanor for failing to comply, as superintendent and agent of the Western Coal & Mining Company, with the provisions of chapter 222 of the Laws of 1911. Trial was had before a justice of the peace of the county, and the defendant was found guilty and fined. An appeal was duly taken to the district court of Crawford county and, upon the case being called for trial therein, the defendant filed his motion to quash the complaint upon the ground, substantially, that chapter 222 of the Laws of 1911, under which the complaint was made, is in violation of sections 1 and 2 of the bill of rights, and section 17 of article 2 of the constitution of Kansas, and of section 1 of the fourteenth amendment to the constitution of the United States. On the hearing, the motion to quash was overruled, and this constitutes the most important question in the case.

The questions involved are very analogous to those involved in the case of *In re* Williams, 79 Kan. 212, 98 Pac. 777 (affirmed 222 U. S. 415), known as the black powder case. The act involved in that case (Laws 1907, ch. 250, Gen. Stat. 1909, §§ 5045-5051) imposed upon the operators of coal mines certain regulations involving greater expense in the operation of coal mines, the object of which was to guard the employees from the accidental explosion of the powder used in such mining and to guard such employees from the consequences thereof. Identically the same objections were made to that act as are made to the act involved in this case, above recited.

It is probably true that the requirements of the act in question involve a greater expense to the mining companies than did the provisions of the black powder act, but there is no showing that such requirements are

confiscatory or unreasonable in consideration of the object to be attained.

It is contended in this case that the act is discriminatory in that it places burdens upon coal-mine operators while the operators of lead, zinc, gypsum and salt mines are free from such burdens, and it is contended that the occupation of working in such other mines is equally hazardous and dangerous to the health of the employees as is the work in coal mines; that a general law could have been made applicable to all such employments, and therefore the special law is in violation of section 17 of article 2 of the constitution of Kansas. It can not be said as a matter of law that the contention is correct.

On the other hand, it is contended that the act in question was passed in the exercise of the police power of the state and that the legislature had a right to select as a class persons engaged in the mining of coal and to make a law specially applicable to that class. It is practically conceded that the enactment of the law was in the exercise of the police power, and only as such can it be sustained.

The determination of the necessity and wisdom of a police regulation rests, in the first instance, upon the legislature, and if there be reasonable grounds for exercising such power the court should not interfere although its judgment might not fully concur with that of the legislature. In *McLean v. Arkansas,* 211 U. S. 539, 53 L. Ed. 315, it was said:

"The legislature, being familiar with local conditions, is, primarily, the judge of the necessity of such enactments. The mere fact that a court may differ with a legislature in its views of public policy, or that judges may hold views inconsistent with the propriety of the legislation in question affords no ground for judicial interference, unless the act in question is unmistakably and palpably in excess of legislative power." (p. 547.)

In *St. Louis Cons. Coal Co. v. Illinois,* 185 U. S. 203, 46 L. Ed. 872, it was said:

"The regulation of mines and miners, their hours of

labor, and the precautions that shall be taken to insure their safety, health and comfort, are so obviously within the police power of the several states that no citation of authorities is necessary to vindicate the general principle." (p. 207.)

(See, also, *Rambo v. Larrabee*, 67 Kan. 634, 73 Pac. 995; *Health Dep't v. Rector, etc.*, 145 N. Y. 32, 39 N. E. 833, 27 L. R. A. 710, 45 Am. St. Rep. 579; *Lawton v. Steele*, 152 U. S. 133.)

In *Booth v. State*, 179 Ind. 405, 100 N. E. 563, sustaining the validity of a similar statute requiring bath- houses at coal mines, it was said:

"The act of March 8, 1907, . . . requiring the owners or operators of coal mines to erect and maintain washhouses, being a proper exercise of the police power, is not open to the objection that it contravenes the 14th amendment to the Constitution of the United States in that it deprives the owner or operator of property without compensation.

"The legislature alone may determine, inside the limits fixed by the Constitution, when public safety or welfare requires the exercise of the police power, and the courts can only interfere when a statute conflicts with the Constitution and have nothing to do with the wisdom, policy or necessity of the enactment." (Syl. ¶¶ 8, 9.)

It is a matter of common knowledge in Kansas that many of the coal mines therein are worked at considerable depths and that the temperature in such mines is considerably higher than at the surface; that the atmosphere therein is damp and that the laborers therein perspire freely, and that on coming to the surface it is a great protection to their heath and well-being that a washhouse should be located as required by the act in question in order that their bodies may be cleansed and dry clothing substituted for their laboring clothes before walking any considerable distance from the mine, especially in cool or cold weather. The health of the employee is a matter of concern not only to himself, but to the employer and the public as well. The framers of

the law will be presumed to have been possessed of such general knowledge and to have made such special investigations of the conditions at coal mines as to them was deemed necessary.

A jury were empaneled to try the case, and it is claimed that the court erred in overruling the challenge of the defendant to the qualifications and competency of one Banhart to serve as a juror. The particular grounds for challenging this juror were that he testified that he was a member of the United Mine Workers of America; that as a member of that organization he paid weekly or monthly dues; that he did not know whether such dues went to employ counsel for the state in this prosecution; that he did not know whether certain attorneys prosecuting the case were employed by the United Mine Workers of America; that he did not know whether such attorneys were employed by Leon Besson, head of the society of mines and miners, or not; that he did not know whether the organization to which he belonged was interested in the enforcement of the law; that as an individual member of that organization he was interested in the enforcement of the law; that he did not expect any money from the conviction of the defendant; that as a miner he was interested in the law, thought it was a good law, and as a citizen thought, as long as it was the law, it should be enforced; that notwithstanding he was a miner, a member of the organization, and interested in seeing the law enforced, he would give the defendant a fair trial. The challenge was overruled.

Jurors Doblebower and Fisher were also challenged and examined, and made answers to questions substantially the same as had Banhart. A talesman named Bollocco was called and examined, and testified substantially as had the others, except that he was an ex-member and not a present member of the United Mine Workers of America; that he had been employed by the Western Coal & Mining Company, but was at the

time of his examination engaged in other business. All these challenges were overruled. Defendant then peremptorily challenged Banhart, Fisher and Bush, when, his right to challenge being exhausted, he was forced to go to trial with Doblebower as a member of the jury.

Every good citizen ought to be in favor of the enforcement of the laws of the state, and the fact that the law is designed to protect a special class of business or property, generally, does not disqualify a juror who has some general interest in the class of business, but has no personal interest in the result of the action. Neither does the fact that a juror has sometime employed an attorney in another matter, which attorney is engaged in the trial of the present case, of itself disqualify such juror.

Upon the production of the first witness, the defendant objected to the introduction of any testimony on the ground that the complaint did not charge the defendant with an offense under any valid law of the state. The objection was properly overruled, and the case proceeded.

The state introduced as a witness Leon Besson, who testified that he was secretary of the state association of miners and, as such, was state mine inspector; that he was acquainted with shaft No. 15 of the Western Coal & Mining Company, knew the defendant, superintendent of that mine, had been to the mine and examined the bathhouse there, and had taken the measurements of the wash room and dressing room; he said there were sixty lockers and one shower, and proceeded to detail the arrangements of the rooms, the supply of water and how it was operated, etc. He testified, in substance, that he examined the building with reference to heat and the water and steam pipes, and described generally the conditions therein as he saw them.

On cross-examination he was asked many questions as to the size, arrangement, etc., of a wash house such as he considered sufficient at that mine. It was claimed

by the state that these questions were propounded to him as an expert designer or builder, and the objections thereto were sustained. There was no material error in excluding answers to such questions as were held improper. The testimony in chief did not entitle the defendant to cross-examine the witness as an architect or designer of a wash house.

William Kiehl also testified as a witness for the state, and gave a description, much as had the former witness, of the building and its condition from what he had seen, and as to the manner in which it was kept. Over the objection of the defendant, he was allowed to say that he stopped bathing there because it became so filthy that he did n't think it decent to bathe there; that he did n't think it healthy. The objection is urged that the court erred in allowing him to testify that he had quit bathing there while he continued to work at the mine. This seems to have been only incidental to his testimony as to the condition of the bathhouse, and while his not continuing to bathe at the bathhouse was itself immaterial, we can not see that it was prejudicial.

We find no substantial error on the trial, and the judgment is affirmed.