BATEMAN et al. v. SOUTHERN OREGON CO. et al.

(Circuit Court of Appeals, Ninth Circuit.   October 5, 1914.)

No. 2392.

1. COURTS (§ 328*)—JURISDICTION OF FEDERAL COURTS—AMOUNT OR VALUE IN DISPUTE—AGGREGATION OF CLAIMS.

Where a large number of complainants, each claiming a separate tract of land, although under the same act of Congress, unite in a suit to establish their claims, their causes of action are separate and distinct, and the value of the lands so separately claimed cannot be aggregated for the purpose of giving a federal court jurisdiction.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 890-896; Dec. Dig. § 328.*

Jurisdiction of federal courts as determined by amount in controversy, see notes to Auer v. Lombard, 19 C. C. A. 75; Tennent-Stribling Shoe Co. v. Roper, 36 C. C. A. 459; O. J. Lewis Mercantile Co. v. Klepner, 100 C. C. A. 288.]

2. PUBLIC LANDS (§ 117*)—CONCLUSIVENESS OF PATENT.

A patent to public lands from the United States is conclusive against all persons whose rights did not commence previous to its issuance, and the fact that it may have been issued through fraud, error, or irregularity does not subject it to attack by one who at the time had no interest in the land.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. § 324; Dec. Dig. § 117.*]

3. PUBLIC LANDS (§ 117*)—GRANT TO AID PUBLIC IMPROVEMENT—SUIT TO ENFORCE CONSTRUCTIVE TRUST.

By Act March 3, 1869, c. 150, 15 Stat. 340, a grant of land was made to the state of Oregon to aid in the construction of a military wagon road; the act providing that the lands should be sold "to any one person only in quantities not greater than one quarter section and for a price not exceeding" $2.50 per acre. The state granted the lands to a corporation, to be used in aid of the construction of the road. By a subsequent act of Congress (Act June 18, 1874, c. 305, 18 Stat. 80) it was provided that, on proof of the construction of the road, patents should issue to the state, or, if it had transferred its interest to a corporation, then to such corporation. Patents were thereafter issued to the corporation. Complainants joined in a suit to enforce the right of each to purchase a quarter section of the land at $2.50 per acre, alleging that it was held subject to a trust to make such sales in accordance with the terms of the grant. Held that, whatever might be the right of the United States to enforce such a trust, all others having then no interest in the lands were concluded by the patents and that complainants had no standing to attack the title which the patents purported to convey.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. § 324; Dec. Dig. § 117.*]

Appeal from the District Court of the United States for the District of Oregon; Chas. E. Wolverton, Judge.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

Suit in equity by D. F. Bateman and 112 others against the Southern Oregon Company, the State of Oregon, and Oswald West, Governor, and A. M. Crawford, Attorney General, of the State of Oregon. Decree for defendants, and complainants appeal. Affirmed.

Suit in equity by the appellants for an interpretation and construction of an act of Congress, entitled "An act granting lands to the state of Oregon to aid in the construction of a military wagon road from the navigable waters of Coos Bay to Roseburg, in said state," approved March 3, 1869 (15 Stat. p. 340), and various acts supplemental thereto; that the court finally and for all purposes wind up and settle the trust described in the complaint, fully ascertaining and definitely settling and adjusting the rights of all parties interested therein; for an injunction restraining logging operations on certain lands situated in the state of Oregon; and for the appointment of a receiver to collect and account for all moneys received by the appellees by reason thereof.

On March 3, 1869, Congress passed an act, entitled "An act granting lands to the state of Oregon to aid in the construction of a military wagon road from the navigable waters of Coos Bay to Roseburg in said state." The act provided as follows:

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, that there be, and hereby is, granted to the state of Oregon, to aid in the construction of a military wagon road from the navigable waters of Coos Bay to Roseburg, alternate sections of public lands, designated by odd numbers, to the extent of three sections in width on each side of said road: Provided, that the lands hereby granted shall be exclusively applied to the construction of said road and to no other purpose, and shall be disposed of only as the work progresses: Provided, further, that the grant of lands hereby made shall be upon the condition that the lands shall be sold to any one person only in quantities not greater than one quarter section, and for a price not exceeding two dollars and fifty cents per acre: And provided further, that any and all lands heretofore reserved to the United States, or otherwise appropriated by act of Congress or other competent authority, be, and the same are hereby, reserved from the operation of this act, except so far as it may be necessary to locate the route of said road through the same, in which case the right of way to the width of one hundred feet is granted: And provided further, that the grant hereby made shall not embrace any mineral lands of the United States, or any lands to which homestead or pre-emption rights have attached.

"Sec. 2. And be it further enacted, that the lands hereby granted to said state shall be disposed of by the Legislature thereof for the purpose aforesaid, and for no other; and the said road shall be and remain a public highway for the use of the government of the United States, free from tolls or other charges upon the transportation of any property, troops, or mails of the United States.

"Sec. 3. And be it further enacted, that said road shall be constructed with such width, graduation, and bridge as to permit of its regular use as a wagon road, and in such other special manner as the state of Oregon may prescribe.

"Sec. 4. And be it further enacted, that the state of Oregon is authorized to locate and use in the construction of said road an additional amount of public lands, not previously reserved to the United States nor otherwise disposed of, and not exceeding six miles in distance from it, equal to the amount reserved from the operation of this act in the first section of the same, to be selected in alternate odd sections, as provided in section first of this act.

"Sec. 5. And be it further enacted, that lands hereby granted to said state shall be disposed of only in the following manner, that is to say, when the Governor of said state shall certify to the Secretary of the Interior that ten continuous miles of said road are completed, then a quantity of the land hereby granted, not to exceed thirty sections, may be sold, and so on from time to time, until said road shall be completed; and if said road is not completed within five years no further sales shall be made, and the lands remaining unsold shall revert to the United States: Provided, however, that the entire

amount of public land granted by this act shall not exceed three sections per mile for each mile actually constructed.

"Sec. 6. And be it further enacted, that the United States Surveyor General for the district of Oregon shall cause said lands, so granted, to be surveyed at the earliest practicable period after said state shall have enacted the necessary legislation to carry this act into effect."

On October 22, 1870, the Legislature of the state of Oregon passed the following act, entitled "An act donating certain lands to the Coos Bay Wagon Road Company":

"Whereas, the Congress of the United States, at the session beginning on the 7th day of December, 1868, passed an act donating lands to the state of Oregon: * * *

"Be it enacted by the Legislative Assembly of the state of Oregon:

"Section 1. That there is hereby granted to the Coos Bay Wagon Road Company all lands, rights of way, rights, privileges and immunities heretofore granted or pledged to this state by the act of Congress in this act heretofore cited, for the purpose of aiding said company in constructing the road mentioned and described in said act of Congress, upon the conditions and limitations therein prescribed.

"Sec. 2. There is also hereby granted and pledged to said company all moneys, lands, rights, privileges and immunities which may hereafter be granted to this state to aid in the construction of such road for the purposes, and upon the conditions and limitations mentioned in said act of Congress, or which may be mentioned in any further grants of money or lands to aid in constructing such road.

"Sec. 3. Inasmuch as there is no law upon this subject at the present time, this act shall be in force from and after its passage."

Laws Or. 1870, pp. 40–42.

On June 18, 1874, Congress passed the following act, entitled "An act to authorize the issuance of patents for lands granted to the state of Oregon in certain cases":

"Whereas, certain lands have heretofore, by act of Congress, been granted to the state of Oregon to aid in the construction of certain military wagon roads in said state, and there exists no law providing for the issuing of formal patents for said lands:

"Therefore, be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, that in all cases when the roads in aid of the construction of which said lands were granted are shown by the certificate of the Governor of the state of Oregon, as in said acts provided, to have been constructed and completed, patents for said lands shall issue in due form to the state of Oregon as fast as the same shall, under said grants, be selected and certified, unless the state of Oregon shall by public act have transferred its interests in said lands to any corporation or corporations, in which case the patents shall issue from the General Land Office to such corporation or corporations upon their payment of the necessary expenses thereof: Provided, that this shall not be construed to revive any land grant already expired nor to create any new rights of any kind except to provide for issuing patents for lands to which the state is already entitled."

18 Stats. p. 80, c. 305.

On February 12, 1875, the United States of America, pursuant to the act of Congress of June 18, 1874, above set forth, duly issued to the Coos Bay Wagon Road Company a patent covering and embracing 42,496.93 acres of the lands granted to the state of Oregon by the act of March 3, 1869; on March 18, 1876, a second patent was issued to the Wagon Road Company covering and embracing 1,080 acres of the lands; on November 8, 1876, a third patent was issued to the Wagon Road Company covering and embracing 61,111.53 acres of the lands; and on February 17, 1877, a fourth patent was issued to the Wagon Road Company covering and embracing 431.65 acres of such lands. The four patents thus issued by the United States to the Wagon Road Company covered, in the aggregate, 105,120.11 acres, and embraced all of the lands granted to the state of Oregon by the act of Congress of March 3, 1869

On May ·31, 1875, the Wagon Road Company granted to one John Miller, alias Ambrose Woodroof, all of the lands embraced in the patent first above referred to, with the exception of certain parcels thereof aggregating 6,963.34 acres, which prior to that time had been conveyed to other parties. Subsequently Miller conveyed the lands to Collis P. Huntington, Charles Crocker, Leland Stanford, and Mark Hopkins. On March 27, 1883, Crocker acquired all of the right, title, and interest of Huntington, Stanford, and Hopkins in the lands. On December 20, 1883, Crocker conveyed the lands to one W. H. Besse. On January 7, 1884, the Wagon Road Company conveyed to Besse all the lands embraced in the second, third, and fourth patents hereinabove referred to. On December 29, 1883, Besse conveyed the lands embraced in the first patent to one Gray, and the latter, on January 5, 1884, conveyed the lands to the Oregon Southern Improvement Company. On June 4, 1884, Besse conveyed to the last-named company direct all of the lands covered by the second, third, and fourth patents. On January 1, 1884, the Oregon Southern Improvement Company executed and delivered to the Boston Safe Deposit & Trust Company, as trustee, a certain mortgage or deed of trust covering all of the lands for which patents had been issued to the Wagon Road Company pursuant to the act of Congress of June 18, 1874, to secure the payment of certain bonds to be thereafter issued by the Oregon Southern Improvement Company. On December 28, 1886, William D. Rotch and Edward D. Mantell (who had succeeded the Boston Safe Deposit & Trust Company as trustees under the deed of trust or mortgage), instituted suit in the Circuit Court of the United States for the District of Oregon against the Oregon Southern Improvement Company to foreclose the mortgage or deed of trust. Such proceedings were thereafter had in the suit that on June 23, 1887, pursuant to an order of the court, one George H. Durham, as master thereof, sold to William J. Rotch and William S. Crapo all of the properties of the Oregon Southern Improvement Company, including the lands which that company had acquired by mesne and by direct conveyances from the Coos Bay Wagon Road Company, as hereinabove set forth; and on November 16, 1887, a deed was duly executed and delivered by the master to the grantees, conveying to the latter all of the right, title, and interest of the Oregon Southern Improvement Company in and to such lands. On December 14, 1887, Rotch and Crapo conveyed the lands to the Southern Oregon Company, one of the defendants herein, and the latter company now holds the legal title thereto and is in possession·thereof.

It is alleged in the complaint filed by the plaintiffs that the act of Congress of March 3, 1869, granted all of the lands embraced therein to the state of Oregon in trust for the purposes therein set forth; that the state of Oregon, by virtue of accepting the grant of the lands from the United States, became and has ever since remained a cotrustee with the defendant Southern Oregon Company of all of the lands; that the true title to all of the lands is now in the state of Oregon, except such fraudulent and pretentious right as the defendant Southern Oregon Company unlawfully holds as an involuntary trustee of a constructive trust; that the United States has never, by public act or otherwise, directly or indirectly revoked or abrogated the express trust contained in the act of Congress of March 3, 1869, as to the state of Oregon, and the state of Oregon has never renounced the trust or denied it; and the trust remains in full force and effect, and is in the same legal position or situation, as to title, as it was on the 3d day of March, 1869. It is further alleged in the bill that the defendant Southern Oregon Company, by virtue of the acts hereinabove set forth, unlawfully asserts and assumes to exercise and enjoy an unconditional estate in fee simple in and to the lands granted to the state of Oregon, notwithstanding that the Southern Oregon Company, and each of its predecessors in interest, had full and complete knowledge of all the conditions and restrictions affecting the lands.

The bill contains an enumeration of the specific quarter sections of land applied for and claimed by each of the plaintiffs, and in that connection it is alleged that for each tract the claimant thereof had tendered to the Southern Oregon Company the sum of $2.50 per acre, and had demanded a deed therefor; that by virtue of their application for the lands the plaintiffs are, in relation to the trust created by the act of Congress of March 3, 1869, in

privity with the state of Oregon, trustee of all such lands; that the defendant Southern Oregon Company, and all its predecessors in interest, accepted and assented to all the terms, restrictions, limitations, and conditions contained in the acts of Congress hereinabove set forth, and the act of the Legislature of the state of Oregon approved October 22, 1870; that the defendant Southern Oregon Company, and the state of Oregon, are bound by the terms, conditions, and restrictions contained in and created by the express trust set forth in the act of Congress of March 3, 1869; that by virtue of the matters and things set forth in the bill the defendant Southern Oregon Company is an involuntary trustee of all the lands involved in this suit, and such lands constitute and are held as a constructive trust by the Southern Oregon Company, with no title or estate in or to the same whatsoever, except such title as it has acquired by fraud.

The plaintiffs asked for an interpretation and construction of the various acts set forth in the bill; that the court finally and for all purposes wind up and settle the trust described in the complaint, fully ascertaining and definitely settling and adjusting the rights of all parties interested therein; that an injunction issue restraining certain logging operations which, as is alleged in the bill, are being conducted on portions of the lands involved; and for the appointment of a receiver to investigate such operations and to collect and account for all moneys obtained by the Southern Oregon Company by reason thereof.

Motions to dismiss the bill were interposed by the defendants, respectively. The motions were granted, and a judgment entered dismissing the cause, from which judgment the plaintiffs appeal to this court.

T. S. Minot, of San Francisco, Cal. (E. L. C. Farrin, of San Francisco, Cal., of counsel), for appellants.

Dolph, Mallory, Simon & Gearin, of Portland, Or., for appellee Southern Oregon Co.

A. M. Crawford, Atty. Gen., and J. W. Crawford, Asst. Atty. Gen., for appellee State of Oregon.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge (after stating the facts as above). [1] 1. The plaintiffs in this case number 113. They each claim a separate and distinct quarter section of land, of 160 acres each, within a larger tract containing 105,120.11 acres claimed by the defendant the Southern Oregon Company. The latter company is the successor in interest through mesne conveyances of the Coos Bay Wagon Road Company, the original grantee, under patents issued to that company by the United States in the years 1875, 1876, and 1877, pursuant to certain acts of Congress providing for the construction of a military wagon road from the navigable waters of Coos Bay to Roseburg, in Oregon. The purpose of this suit is to compel the defendant the Southern Oregon Company, as the successor in interest in the Coos Bay Wagon Road grant, to convey all its right, title, and interest in and to the separate tracts of land claimed by the respective plaintiffs, as set forth and described in the bill of complaint. It is not claimed that any plaintiff has any interest in the land in suit other than the claim asserted to the specific tract. It is alleged in the bill of complaint that the value of each individual claim of 160 acres of land involved in the suit and claimed by the respective plaintiffs is over the sum of $2,000, exclusive of interest and costs. The purpose of this allegation was to give the court jurisdiction of the case under the statute as it existed prior to January 1, 1912. The bill of complaint in this case was filed on July

29, 1913. The Judicial Code (Act March 3, 1911, 36 Stats. 1087, c. 231 [Comp. St. 1913, § 968 et seq.]) went into effect on January 1, 1912. It is provided in section 24 of this Code (Comp. St. 1913, § 991) that the District Court shall have jurisdiction "of all suits of a civil nature, at common law or in equity, * * * where the matter in contro: versy exceeds, exclusive of interest and costs, the sum or value of three thousand dollars, and (a) arises under the Constitution or laws of the United States. * * *"

This case involves the construction of certain acts of Congress. Assuming that the case, therefore, arises under the laws of the United States, the question is: Does the value of the land in controversy exceed, exclusive of interest and costs, the sum or value of $3,000? The bill of complaint does not so allege. Is it sufficient that by mathematical calculation the aggregate value of the plaintiffs' claims as alleged in the complaint may equal or exceed that amount, and are the plaintiffs' claims of the character that they may be combined together into an aggregate sum sufficient to confer jurisdiction upon the District Court?

The rule with respect to the amount in controversy for jurisdictional purposes was stated by Mr. Justice Bradley in Clay v. Field, 138 U. S. 464, 479, 11 Sup. Ct. 419, 425 (34 L. Ed. 1044), as follows:

"The general principle observed in all is that if several persons be joined in a suit in equity or admiralty, and have a common and undivided interest, though separable as between themselves, the amount of their joint claim or liability will be the test of jurisdiction; but where their interests are distinct, and they are joined for the sake of convenience only, and because they form a class of parties whose rights or liabilities arose out of the same transaction, or have relation to a common fund or mass of property sought to be administered, such distinct demands or liabilities cannot be aggregated together for the purpose of giving this court jurisdiction by appeal, but each must stand or fall by itself alone."

This rule has been followed in a number of cases, and has been re: stated in the recent case of Troy Bank v. Whitehead, 222 U. S. 39, 40, 32 Sup. Ct. 9, 56 L. Ed. 81, as follows:

"When two or more plaintiffs, having separate and distinct demands, unite for convenience and economy in a single suit, it is essential that the demand of each be of the requisite jurisdictional amount; but when several plaintiffs unite to enforce a single title or right, in which they have a common and undivided interest, it is enough if their interests collectively equal the jurisdictional amount."

This rule was followed by members of this court in the recent case of Simpson v. Geary, 204 Fed. 507, 510, in the District Court of Arizona, convened under section 266 of the Judicial Code (Comp. St. 1913, § 1243).

It is clear that the plaintiffs' claim of federal court jurisdiction does not come within this rule. They have not a common, undivided interest in the land in controversy. Their claims are separate and distinct, and the only reason for combining them in one case is that of convenience, and because they form a class of parties whose rights are alleged to have arisen out of the same transaction, and have relation to a common mass of property sought to be administered. This is not sufficient to justify the court in combining their separate claims in one aggregate amount for the purpose of conferring jurisdiction upon the

District Court. But it is possible that this objection to the bill of complaint might be cured by amendment. We will, therefore, proceed to consider a more serious objection to the bill.

[2, 3] 2. It is contended on behalf of the plaintiffs that the proviso contained in the act of Congress of March 3, 1869, "that the grant of lands hereby made shall be upon the condition that the lands shall be sold to any one person only in quantities not greater than one quarter section, and for a price not exceeding two dollars and fifty cents per acre," was a grant to the state of Oregon in trust for the benefit of third parties; that the Southern Oregon Company, having acquired this trust property with notice of such trust, is bound by it and may be compelled to execute it; that the plaintiffs having before the commencement of this suit tendered to the defendant the Southern Oregon Company the sum of $2.50 per acre for the several tracts of land mentioned in the complaint, they have become beneficiaries of the trust and are entitled to a decree of the court compelling the defendant the Southern Oregon Company to quitclaim and release to the respective claimants all its right, title, and interest and estate of every nature whatsoever, to the lands described in the complaint. It is not alleged in the bill that the military wagon road provided for in the act of March 3, 1869, was not constructed and completed in accordance with the terms therein provided; nor is it charged that the lands granted were not applied to the construction of the road. But it sufficiently appears from the act of Congress of June 18, 1874, a copy of which is attached to the complaint, that the road was so constructed and completed, and that the land was applied to its construction. That act provided:

"That in all cases when the roads in aid of the construction of which said lands were granted are shown by the certificate of the Governor of the state of Oregon, as in said act provided, to have been constructed and completed, patents for said lands shall issue in due form to the state of Oregon as fast as the same shall, under said grants, be selected and certified, unless the state of Oregon shall by public act have transferred its interests in said lands to any corporation or corporations, in which case the patents shall issue from the General Land Office to such corporation or corporations upon their payment of the necessary expenses thereof."

As the patents for the lands granted under the act of March 3, 1869, were issued to the Coos Bay Wagon Road Company after the passage of the act of June 18, 1874, the presumption is that they were issued in accordance with the terms of the act; that the state of Oregon by the public act of October 22, 1870, a copy of which is also attached to the bill of complaint, had transferred its interest in the lands to that corporation, and that the lands had been earned by the Wagon Road Company by the timely construction and completion of the wagon road as required by the act of March 3, 1869. We shall therefore assume it to be a fact apparent on the face of the bill of complaint that the military wagon road provided by the act of March 3, 1869, was constructed and completed in accordance with the terms of that act, and that the lands granted were applied to its construction.

What, then, is the interest of the plaintiffs in this grant? It does not appear from the bill of complaint that the plaintiffs or any of their predecessors aided or in any manner assisted in the construction of the wagon road; nor does it appear that they were ever settlers upon

the lands granted, either at the time of the grant, or at the time patents were issued, or at any time; nor does it appear that the plaintiffs, or any of their representatives, ever applied to the state of Oregon, or to the United States, to enter or purchase any of the lands described, under the terms of the grant or otherwise. The claim of the plaintiffs is that the Coos Bay Wagon Road Company, in violation of the proviso of the granting act limiting the number of acres to be sold to any one person to one quarter section, executed and delivered to certain parties deeds of conveyance to the quantities of land described in the patents in excess of one quarter section to one person; that the plaintiffs have tendered the defendant the Southern Oregon Company the sum of $2.50 per acre for their respective quarter sections of land, and have demanded conveyances of the same from that defendant; that the defendant refused to accept the sum offered, and has refused to execute and deliver deeds as demanded.

The grant to the state of Oregon was in aid of the construction of a military wagon road from the navigable waters of Coos Bay to Roseburg. The state conveyed this grant, together with any additional grant that might thereafter be made to the state, to the Coos Bay Wagon Road Company, "for the purpose of aiding said company in constructing the road mentioned and described in the act of Congress, upon the conditions and limitations therein prescribed." No further or other administration of the grant was assumed by the state, and when Congress passed the act of June 18, 1874, providing for the issuance of patents for the lands granted, it recognized that the state had discharged the trust by passing the grant along to the Coos Bay Wagon Road Company. The patents for the lands were thereupon issued by the Land Office to the Coos Bay Wagon Road Company. This was in effect a ratification by Congress of the grant by the state to that company, and the state was thereupon discharged from further administration of the grant, and whatever trust remained was a matter wholly between the United States and the Wagon Road Company and its grantees. The plaintiffs' alleged rights were not asserted until 36 years after the issuance of the last of the four patents conveying the title to the Wagon Road Company. They were therefore not in privity with that title when it was conveyed, and they have since acquired no rights making them privy to the prior title held by the defendants. They are strangers to that title and whatever trust it carries.

The law upon this subject was declared by Chief Justice Marshall, speaking for the Supreme Court, in the case of Hoofnagle v. Anderson, 7 Wheat. 212, 5 L. Ed. 437. In that case, as in the present case, the suit was in equity to obtain a decree for the conveyance of a tract of land to which the defendant held a patent dated the 9th day of October, 1804. The plaintiffs claimed under an entry of the same land made on the 28th day of May, 1806, and consequently 18 months after the date of the defendant's patent. The plaintiffs contended, however, that the patent ought not to stand in their way because it was obtained contrary to law, being founded on a warrant which had been issued by fraud or mistake. The warrant had been issued by the commonwealth of Virginia upon military services rendered the state by the defend-

ant's original predecessor in interest. The warrant erroneously recited that the military services had been rendered in the continental line, whereas it had been rendered in the state line. It was contended on behalf of the plaintiffs that their equity commenced before the legal title of the defendant was consummated, and their pre-existing rights under the statute were impaired by his intrusion into military lands reserved for the plaintiffs. It was contended, further, that the person under whom they claimed had a right to elect among all the vacant lands on the reserved territory, and this right of election had been narrowed by the defendant's patent. Chief Justice Marshall, speaking of the patent in the case, said:

"It is not doubted that a patent appropriates land. Any defects in the preliminary steps, which are required by law, are cured by the patent. It is a title from its date, and has always been held conclusive against all those whose rights did not commence previous to its emanation. * * * If a patent has been issued irregularly, the government may provide means for repealing it; but no individual has the right to annul it, to consider the land as still vacant, and to appropriate it to himself."

The decree of the lower court sustaining the patent and refusing the plaintiffs a decree for a conveyance was accordingly affirmed.

The recent case of Burke v. Southern Pacific Railroad Co., 234 U. S. 669, 34 Sup. Ct. 907, 58 L. Ed. 1527, was also a suit in equity wherein the plaintiff claimed title to mineral lands under certain mining locations made pursuant to the mining laws of the United States. The lands had 15 years previously been patented to the Southern Pacific Railroad Company under a congressional grant which excluded all mineral land other than iron and coal lands. The patent contained a clause providing:

"Excluding and excepting all mineral lands, should any such be found, in the tracts aforesaid; but this exclusion and exception, according to the terms of the statute, shall not be construed to include coal and iron lands."

The plaintiff alleged in the bill of complaint that it was not within the power of the United States to dispose of the mineral lands described in the patent to the Southern Pacific Railroad Company; that said lands had been segregated from the public domain and the beneficial title reserved for mining locators, while the legal title was being held in trust for said locators and their successors. The court was accordingly asked to protect plaintiff's rights by injunctive process controlling the patent issued by the government. Demurrers to the bill were sustained, and the bill dismissed. Upon appeal to this court a number of questions were certified to the Supreme Court of the United States, among others the following:

"Does the fact that the appellant was not in privity with the government in any respect at the time when the patent was issued to the railroad company prevent him from attacking the patent on the ground of fraud, error, or irregularity in the issuance thereof as was alleged in the bill?"

To this question the court answered, "It does," citing Hoofnagle v. Anderson, supra, and other cases in support of that answer. In our opinion the cases cited have determined the law applicable to the present case.

The case of Little Rock & Ft. Smith R. R. Co. v. Howell, 31 Ark. 119, 127, cited by counsel for the plaintiffs in support of his position, does not state any proposition contrary to the law of these cases. In the case cited the Congress of the United States, by Act Feb. 9, 1853, c. 59, 10 Stat. 155, granted lands to the states of Arkansas and Missouri to aid in the construction of a railroad from a point on the Mississippi river, opposite the mouth of the Ohio river, in the state of Missouri, via Little Rock, to the Texas boundary line, near Fulton, in Arkansas. The act provided that where the United States had sold any of the lands granted, or where the right of pre-emption had attached to any of the lands in the grant, other contiguous lands might be selected by the state in lieu of the lands·sold or pre-empted. This is a familiar provision which has been incorporated in all subsequent railroad land grants. The Legislature of the state of Arkansas, by act approved January 16, 1855, amended November 26, 1856, conveyed the lands in that state to the Cairo & Fulton Railroad Company upon certain conditions and limitations. A similar grant was made to the Little Rock & Ft. Smith Branch Road. Among other conditions contained in the grant was one providing that:

"Every person who, on the 9th day of February, 1853, occupied by residence and cultivation thereon any tract of land comprised in the grant made by virtue of and under the provisions of said act of Congress of February 9, 1853, may purchase from" the railroad company, "at two dollars and fifty cents per acre, the legal subdivisions of such land as shall include his residence and actual improvements, not to exceed one quarter section, by complying with the following conditions," etc.

The grantees under this act failed to construct the railroad as required, and the Legislature, by act dated February 1, 1859, continued the grant under similar conditions and limitations as to prior settlers, among others that of the right of prior occupants to purchase land under the continued grant and extending such right to a later date. The act provided that:

"Every person who, on the 1st day of November, 1858, resided on or cultivated any improvement on any of the land comprised in the grant made by virtue of the act of Congress, approved February 9, 1853, may purchase from" the railroad company "at two dollars and fifty cents per acre, one hundred and sixty acres, which may include the actual residence, or the farm of such person, as he or she chooses to elect, by complying with the conditions prescribed," etc.

The plaintiff in the case, one Howell, on the 1st day of November, 1858, resided on and cultivated a tract of 126.54 acres within the grant made by Congress to the state of Arkansas, and within the grant·to the Little Rock & Ft. Smith Branch Road. He applied to that railroad company to purchase this tract of land, offering the price of $2.50 per acre. It was objected that, by reason of the omission of the name of the Little Rock & Ft. Smith Branch Road from the restrictive clause of the act, that road was not bound by it. The court held that the act was clearly intended to include that road, and that, having accepted the grant, it was bound by its conditions, using the language quoted by counsel for the plaintiffs in this case, as follows:

"The provision conferring on occupants the right to purchase 160 acres, including their improvements, at $2.50 per acre, was a just and reasonable one, the price so fixed being twice that at which the government offered them previous to the grant to the state, and the appellant, accepting the grant upon the terms and conditions imposed, must be held to abide by and perform them."

There is nothing in this case supporting plaintiffs' contention. Aside from the question whether the Little Rock & Ft. Smith Branch Road was bound by the provision in the grant in which its name was omitted, there was no controversy as to the right of a prior settler under the general grant to purchase the land at $2.50 per acre. The beneficiaries under the statute were distinctly pointed out and identified by their prior occupancy of the land held by them, and the plaintiff, claiming as such beneficiary, connected himself with the original source of title prior to the grant to the railroad company. The cases admitting a right of action against a subsequent grantee under such a statute and under such circumstances are too numerous to be cited; but they do not aid the plaintiffs in this case. This is not—

"a suit to have one to whom a patent has been issued declared a trustee for another who at the time of its issue had acquired such a right to the land as to entitle him to that form of equitable relief." Burke v. Southern Pacific R. R. Co., supra.

The plaintiffs were not prior occupants or holders of the lands claimed by them, and they have not otherwise connected themselves with the original source of title. Whatever trust remains to be enforced may be determined by a suit on the part of the United States against the holders of the legal title, and it appears from the bill of complaint that such a suit has been commenced and is now pending in the United States District Court for the District of Oregon, having been brought under resolution of Congress of April 30, 1908, authorizing and directing the Attorney General of the United States to institute and prosecute such a suit.

The decree of the lower court is affirmed.