NOLEN v. RIECHMAN, Sheriff, et al.

(District Court, W. D. Tennessee, W. D.    August 6, 1915.)

No. 711.

1. COURTS ⬤➡329—FEDERAL COURTS—JURISDICTION—AMOUNT IN CONTROVERSY—PLEADINGS.

An allegation in a bill in a suit in a federal court that the amount involved is greater than $2,000 is not in accordance with Judicial Code (Act March 3, 1911, c. 231) § 24, 36 Stat. 1091 (Comp. St. 1913, § 991), declaring that the matter in controversy must exceed, exclusive of interest and costs, the sum or value of $3,000, and the court may not entertain jurisdiction unless the requirement of the Code is met, and it cannot treat the allegation as an inadvertence, where the facts shown do not show that the jurisdictional amount is really involved.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 897; Dec. Dig. ⬤➡329.]

2. COURTS ⬤➡328—FEDERAL COURTS—JURISDICTION—AMOUNT IN CONTROVERSY.

To authorize damages to be aggregated to make up the amount requisite to jurisdiction of a federal court, the persons joining in the suit must have a common and undivided interest in the amount involved; and, though one may maintain a representative suit for the benefit of himself and other persons similarly situated, he may not have their damages aggregated, where the property involved is separately owned.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 890-896; Dec. Dig. ⬤➡328.]

3. INJUNCTION ⬤➡85—"JURISDICTION"—RESTRAINING ENFORCEMENT OF UNCONSTITUTIONAL STATUTE.

A federal court of equity may entertain jurisdiction of a suit to enjoin the enforcement of an alleged invalid statute, for the absence of lawful power to impose the restrictions of the statute may result in irreparable loss to the party complaining; for "jurisdiction" is the power to consider and decide one way or the other as the law may require, and jurisdiction

⬤➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

may not be declined merely because it is not foreseen with certainty that the outcome will help plaintiff.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 155, 156; Dec. Dig. ☞85.

For other definitions, see Words and Phrases, First and Second Series, Jurisdiction.]

**4.** CONSTITUTIONAL LAW ☞48—STATUTES—VALIDITY.

The court may not adjudge a statute unconstitutional, unless it is plainly and palpably so, and where there may exist a state of facts justifying a classification or restriction complained of, the court, in determining the validity of the legislation, will assume that the facts existed.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 46; Dec. Dig. ☞48.]

**5.** CONSTITUTIONAL LAW ☞241—EQUAL PROTECTION OF THE LAWS—STATUTES —VALIDITY—"COMMON CARRIER."

Act Tenn. April 3, 1915, defining as a common carrier any person or corporation operating for hire any public conveyance propelled by steam, gasoline, electricity, or other power for purposes of transportation similar to that ordinarily afforded by street railways, and not operated on fixed tracks, by indiscriminately accepting and discharging passengers along the way, and declaring the business of such a common carrier to be a privilege, and forbidding any such carrier to occupy any street or public place in a city or town without first obtaining a permit, by ordinance giving the right of such occupancy, and embodying the routes, terms, and conditions as the city or town may impose, and requiring the carrier to furnish a bond, with sureties, conditioned to pay any adjudged damages as compensation for loss of life or injury to person or property negligently inflicted, defines a new class of "common carriers," and the act is not invalid when applied to the operation of jitneys, as denying the equal protection of the laws, because there is a substantial distinction between a street railway and a jitney, and between a jitney and a taxicab.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 700, 701; Dec. Dig. ☞241.

For other definitions, see Words and Phrases, First and Second Series, Common Carrier.]

**6.** CONSTITUTIONAL LAW ☞211—EQUAL PROTECTION OF THE LAWS.

The equal protection clause of the fourteenth amendment does not take from the state the right to classify subjects of legislation, and it is only when the classification is arbitrary and unreasonable that the court can declare it beyond legislative authority; and a classification, to be obnoxious, must be clearly and actually arbitrary and unreasonable, and not merely possibly so.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 678; Dec. Dig. ☞211.]

**7.** CONSTITUTIONAL LAW ☞297—DUE PROCESS OF LAW.

An operator of an automobile as a common carrier on the streets of a city pursuant to a license is deprived of his property without due process of law, where he is unable to furnish a bond required by statute, unless the exaction of the bond can be justified as a proper exercise of the police power.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 832– 841; Dec. Dig. ☞297.]

**8.** CARRIERS ☞2—REGULATION—USE OF STREETS—"POLICE POWER."

Act Tenn. April 3, 1915, defining as a common carrier any person or corporation operating for hire any public conveyance propelled by steam, gasoline, electricity, or other power similar to that ordinarily afforded by street railways, but not operated on fixed tracks, and requiring such carrier to obtain a permit and to give a bond conditioned that it will pay

any finally adjudged damages for loss of life or injury to person or property inflicted through its negligence, is a valid exercise of the "police power," which embraces regulations designed to promote public convenience or the general prosperity or welfare, or promote public safety or public health.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 4, 5; Dec. Dig. ☞2.

For other definitions, see Words and Phrases, First and Second Series, Police Power.]

9. CONSTITUTIONAL LAW ☞81—POLICE POWER.

The court, to sustain a statute under the police power of the state, must see that its operation tends in some degree to prevent some offense or evil, or to preserve public health, morals, safety, and welfare; and where a statute discloses no such purpose, and has no real and substantial relation to those objects, or is a palpable invasion of rights secured by the Constitution, the court must adjudge it invalid.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 148; Dec. Dig. ☞81.]

10. CARRIERS ☞1—REGULATIONS—USE OF STREETS.

One engaging in the business of common carrier by automobile operated on the streets of a city, and obtaining a license to use the public streets in the prosecution of his business, is subject to the police power, and he holds his property and exercises his rights subject to such other and different burdens as the Legislature may reasonably impose for the safety and convenience or welfare of the public.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 2; Dec. Dig. ☞1.]

In Equity. Suit by E. P. Nolen against J. A. Riechman, Sheriff of Shelby County, Tenn., and E. H. Crump, Mayor of City of Memphis, and W. J. Hays, Chief of Police of Memphis, to enjoin the enforcement of a statute. Preliminary injunction denied.

L. H. Graves, Wm. R. Harrison, and Joe Hanover, all of Memphis, Tenn., for petitioner.

Leo Goodman, C. M. Bryan, and Ben Capell, all of Memphis, Tenn., for defendants.

Before WARRINGTON, Circuit Judge, and McCALL and SANFORD, District Judges, under section 266 of the Judicial Code, as amended March 4, 1913 (37 Stat. 1013, c. 160).

PER CURIAM. The purpose of this suit is to have enforcement of a statute of Tennessee enjoined, upon the ground of its alleged unconstitutionality. The controversy relates to passenger transportation in the streets of Memphis, and the suit is designed to be representative in character, within the meaning of equity rule 38; the plaintiff alleging that his own described conditions apply "to more than 300 others in whose behalf he also brings this bill." The defendants are the officials whose duties would require them to enforce the statute within the city of Memphis. The issue presented on the merits of the case is whether the state has power to establish a license and indemnity system which admittedly applies to the use of automobiles in what is known as the "jitney" service, though not to street railway service, upon the public highways and grounds within the municipalities of the state.

The statute in dispute became effective April 3, 1915, and may be summarized thus:

(a) It defines as a common carrier any person or corporation operating for hire "any public conveyance propelled by steam, * * * gasoline, * * * electricity or other power" for purposes of transportation "similar to that ordinarily afforded by street railways (but not operated upon fixed tracks) by indiscriminately accepting and discharging" passengers "along the way and course of operation," and declares the business of such common carriers to be a "privilege."

(b) It forbids any such carrier to use or occupy any street or public place in a city or town without first obtaining "a permit or license by ordinance giving the right" of such use or occupancy, and embodying "such routes, terms and conditions as such city or town may elect to impose."

(c) It requires the carrier also to furnish a bond, with sureties, in favor of the state and in such sum as the city or town may reasonably demand, not less than $5,000 for each car operated, conditioned that the carrier will pay any finally adjudged damages, "as compensation for loss of life or injury to person or property inflicted" through negligence of the carrier.

(d) It denounces as a misdemeanor the act of so using and occupying the public street or place without first obtaining such permit or license and giving such bond, and, upon conviction, prescribes a fine of not less than $50 nor more than $100 for each offense, and declares each day's continuance to be a separate offense.

(e) It invests all cities and towns with powers corresponding to the measures so prescribed, and also "to impose upon all such common carriers a tax for the exercise of the privilege herein granted."

The case was submitted upon petition and answer, and an independent affidavit in support of the allegations of the petition. Apart from the legal deductions set out in the pleadings, the following may be treated as undisputed facts: The parties to the suit are all citizens of Tennessee and residents of Memphis. The city of Memphis, through its board of commissioners and in pursuance of the statute, has passed a resolution fixing the bond to be given by operators of motor busses at $5,000; and official orders have been given to compel operators of such vehicles to comply with the provision of the statute, which requires the execution and filing of such bond. The plaintiff is financially unable to procure the bond. The automobile he is operating will thus be materially reduced in earning power and in value to him through enforcement of the law. Street railways are in operation under charters and franchises within Memphis, and no such bond is required of their owners. Taxicabs are in use upon the public highways and grounds of the city; but whether operators of taxicabs are amenable to the bond requirement is reduced to a question of law between counsel. Before the passage of the statute, though no dates appear, the plaintiff obtained license to operate his car on the streets of Memphis for a period of one year.

[1] The sole ground of jurisdiction in this court is the claim of constitutional invalidity of the statute because of its alleged violation of the fourteenth amendment. In spite of the federal question so

presented, the defendants earnestly insist that the real purpose of the suit is to enjoin criminal proceedings, and that a court of equity cannot entertain jurisdiction for that reason. Before considering this feature of the defense, we feel called upon to notice a question of jurisdiction which arises upon the face of the petition. · The only allegation there found upon the subject of the amount involved is that it is "greater than two thousand ($2,000) dollars." This, of course, is not in accordance with the requirement that the matter in controversy must exceed, exclusive of interest and costs, "the sum or value of three thousand dollars" (section 24, Judicial Code), nor are we at liberty to entertain jurisdiction unless this requirement is met (A. B. Andrews Co. v. Puncture Proof Footwear Co. [C. C.] 168 Fed. 762, 765, and citations). We might treat the allegation as an inadvertence, but the acknowledged inability of the plaintiff to give the statutory bond, and his limited interest in the machine operated, are suggestive of a serious question as to whether the jurisdictional amount is really involved. In the absence of allegation or showing, it is hard to understand how the loss arising from an operator's inability to use a single automobile for hire can be sufficient to satisfy the statutory requirement; and it is not alleged that the plaintiff, or any one in whose behalf he brings the suit, owns or causes to be operated two or more of such machines.

The question is at once presented, then, whether the alleged loss of the plaintiff could be added to the losses of other operators similarly situated, for purposes of jurisdiction. The principle upon which such an aggregation can be employed as a test of jurisdiction is that the persons joining in the suit must have a common and undivided interest, not distinct interests, in the amount involved; still, this is not to say that, if the property involved is in truth separately owned and held, the parties may not constitute a class who may be joined for the sake of convenience and economy; it is to say that aggregation of their pecuniary interests is not permissible for making up the jurisdictional amount. Clay v. Field, 138 U. S. 464, 479, 480, 11 Sup. Ct. 419, 34 L. Ed. 1044. The plaintiff and other jitney operators have a common interest, it is true, in the question whether a bond can be rightfully exacted of each of them; but it is equally plain, that the damage which the plaintiff alleges, and that of other operators, as well as their titles to the vehicles they operate, are separate and distinct. It may well be, therefore, that the plaintiff can maintain a representative suit for the benefit of himself and other like operators under equity rule 38 (198 Fed. xxix, 115 C. C. A. xxix), and yet not be entitled to have their damages aggregated to make up the amount requisite to jurisdiction (Simpson v. Geary, 204 Fed. 507, 510. [D. C., three judges sitting]; Wheless v. St. Louis, 180 U. S. 379, 381, 21 Sup. Ct. 402, 45 L. Ed. 583; Bateman v. Southern Oregon Co., 217 Fed. 933, 938, 133 C. C. A. 605 [C. C. A., 9th Circ.]). See, also, Citizens' Bank v. Cannon, 164 U. S. 319, 321, 322, 17 Sup. Ct. 89, 41 L. Ed. 451; Walter v. Northeastern R. R. Co., 147 U. S. 370, 373, 374, 13 Sup. Ct. 348, 37 L. Ed. 206. However, we are not disposed to conclude the plaintiff upon this question, at least on the present state of the record; it may be that the facts will jus-

tify amendment to cure the apparent defect. Northern Pac. Railroad v. Walker, 148 U. S. 391, 392, 13 Sup. Ct. 650, 37 L. Ed. 494.

[2] We return to the claim of defendant's counsel that, since the statute is a criminal enactment, a court of equity cannot entertain jurisdiction to enjoin its enforcement. Reliance is placed upon a number of decisions, and among them the very interesting analysis of the jurisdiction of the chancery court of Tennessee and the review made of the decided cases in Kelly v. Conner, 122 Tenn. 339, 372, 123 S. W. 622, 25 L. R. A. (N. S.) 201; yet Mr. Justice Shields said in the course of the opinion:

"We are dealing solely with the jurisdiction of the chancery court of this state."

This statement seems to have been occasioned in part at least by the rule quoted on the next preceding page from Dobbins v. Los Angeles, 195 U. S. 223, 241, 25 Sup. Ct. 18, 22 (49 L. Ed. 169):

"It is well settled that, where property rights will be destroyed, unlawful interference by criminal proceedings under a void law or ordinance may be reached and controlled by a decree of a court of equity."

It must be conceded that this doctrine is an exception to the general rule (In re Sawyer, 124 U. S. 200, 210, 8 Sup. Ct. 482, 31 L. Ed. 402); and yet the exception is so firmly established in the federal practice that no useful purpose would be served by pausing to trace its origin. The reason for the exception, where applicable, is the constitutional invalidity of the statute, and, consequently, the absence of lawful power to impose or enforce the particular exactions or restrictions which would result in irreparable loss to the complaining party. Philadelphia Co. v. Stimson, 223 U. S. 605, 621, 32 Sup. Ct. 340, 56 L. Ed. 570. The contention made here that the court is without jurisdiction to consider the statute overlooks the feature of plaintiff's case which challenges the constitutional validity of the statute. It must be remembered that plaintiff alleges and insists that at and before the enactment of the statute he was using his automobile in the carriage of passengers for hire in the streets of Memphis, in virtue of a city license. This was the business of a common carrier (and in legal effect involved a privilege) quite as certainly before as it was after the enactment of the statute; and such business, embracing as it did the use of an automobile, possessed the essential attributes of property. Whether the enactment of the statute was a rightful exercise of the state's police power to regulate such a business is the ultimate question. But to decide, without considering its merits, that plaintiff does not thus present a substantial claim, and to dismiss the case, would be to overlook the basic principle of jurisdiction; for, as Mr. Justice Holmes said in The Fair v. Kohler Die Mfg. Co., 228 U. S. 22, 25, 33 Sup. Ct. 410, 57 L. Ed. 716:

"Jurisdiction is authority to decide the case either way."

And Mr. Justice Van Deventer said, in Geneva Furniture Mfg. Co. v. Karpen & Bros., 238 U. S. 254, 35 Sup. Ct. 788, 59 L. Ed. — (decided June 14, 1915):

225 F.—52

"Jurisdiction, as pointed out in that case [The Fair v. Kohler Die Mfg. Co.], is the power to consider and decide one way or the other, as the law may require, and is not to be declined merely because it is not foreseen with certainty that the outcome will help the plaintiff."

[3] Coming, therefore, to consider the validity of the statute for the purpose of determining the question of equity jurisdiction, we observe that the plaintiff alleges and insists that, in view of the fourteenth amendment and of the statute, he is (1) denied the equal protection of the laws, in that other common carriers are not required to furnish a like indemnity bond; (2) he is deprived of his property without due process of law. In determining these questions we must keep in mind "the principle, long established and vital in our constitutional system, that the court may not strike down an act of legislation as unconstitutional unless it be plainly and palpably so," and also that a court is not empowered to adjudge a statute unconstitutional where the question is doubtful. Grainger v. Douglas Park Jockey Club, 148 Fed. 521, 533, 78 C. C. A. 199, 8 Ann. Cas. 997 (C. C. A., 6th Circ.); Mutual Film Co. v. Industrial Commission of Ohio, 215 Fed. 138, 141, and citations (D. C., three judges sitting), affirmed 236 U. S. 230, 35 Sup. Ct. 387, 59 L. Ed. 552; Rail & River Coal Co. v. Yaple, 214 Fed. 273, 279, 280 (D. C., three judges sitting), affirmed 236 U. S. 338, 35 Sup. Ct. 359, 59 L. Ed. 607.

Considering the constitutional guaranties (of the fourteenth amendment) in their inverse order, we come to inquire whether the plaintiff is denied the equal protection of the laws.

[4, 5] The first section of the act declares those engaged in the business herein defined to be common carriers. The third section requires that such carriers shall execute a bond for each car operated, in a sum not less than $5,000, conditioned that they will pay any damage that may be adjudged against them as compensation for loss of life or injury to person or property inflicted by such carriers, or caused by their negligence.

As stated in the caption of the act, the purpose of the Legislature was to define as common carriers within this state persons, firms, and corporations operating certain self-propelling public conveyances and affording means of street transportation similar to that ordinarily afforded by street railways, but not operated upon fixed tracks, to declare their business a privilege, to regulate the same, and to require such common carriers to give bond to indemnify against loss of life and damage to person and property.

Here is a new class of common carriers, clearly pointed out and defined in the law, differing in material respects from other common carriers. For reasons no doubt sufficient in the minds of the lawmakers, this new class of common carriers is required to execute a bond to indemnify against loss those who might be damaged in person or property, through negligence.

Confessedly, steam and street railway companies, and owners and operators of omnibuses, are not required to give bond for protection to those negligently injured by them, such as is provided for in the act under consideration; but it is of common knowledge that statutory

requirements, both federal and state, relating to and regulating common carriers, materially differ. While the services they all render are those of common carriers, yet the services are so different in detail that it would be wholly impracticable to write a statute applicable to them all, and serve, at the same time, the convenience and safety of the public.

The presumption is always in favor of the validity of legislation; and if there could exist a state of facts justifying the classification or restriction complained of, the courts will assume that it existed. Grainger v. Douglas Park Jockey Club, 148 Fed. 513, 78 C. C. A. 199, 8 Ann. Cas. 997, where the subject of classification was exhaustively considered by the Court of Appeals for the Sixth Circuit; Soon Hing v. Crowley, 113 U. S. 703, 5 Sup. Ct. 730, 28 L. Ed. 1145; Price v. Illinois, infra.

It may well have been that the Legislature had in mind, when it enacted the statute in question, that those engaging in the business which the act sought to regulate operated vehicles susceptible of becoming dangerous to the public by the manner of their operation; that they had no fixed track upon which to run, and were at liberty to move over the entire surface of the street; that they had no schedule; that pedestrians had no way of knowing when and where to expect them; that they increased the danger to persons using the street, whether as pedestrians or while boarding or leaving street cars or other vehicles; that they stopped at street crossings, or along the curb between street crossings, to receive and discharge passengers; that very often the driver owns the machine, or at least an equity in it; that many of them are financially irresponsible; that the patrons of such vehicles are composed of men, women, and children; that the vehicles, in the hands of careless drivers, might rush through crowded streets at a dangerous rate of speed, probably without any financial responsibility to their patrons or others upon whom damage might be inflicted by such machines, because of the negligence of the operators.

Furthermore, a substantial distinction between the property of the owner of a street railway and that of the owner of a "jitney" should not escape attention. The former consists of a fixed plant, including rolling stock, which is operative only along tracks provided for the purpose, while that of the latter is fugitive in character, since it is operative through its own power upon any portion of the surface of an ordinary highway. It results that the street railway property is in its nature an indemnity against the consequences of negligence, and so is at least an equivalent for the bond of indemnity which is here resisted by the owner of the "jitney."

We may add in this connection that under section 3 of the Tennessee Act of March 24, 1877, c. 72, p. 94, amending the law in relation to the consolidation of railways, it was provided that no railroad company should have power under any laws of the state to give or create any mortgage or other lien on its railway property in the state, which should be valid and binding against judgments and decrees, and executions therefrom, for damages done to persons and property in the

operation of its railroad in the state. This act was held by the Supreme Court of Tennessee, in Frazier v. Railway Co., 88 Tenn. 138, 166, 12 S. W. 537, to be constitutional, and to affect all railroad companies alike, whether they should thereafter consolidate or not. This provision, which was incorporated in section 1271 of Milliken & Vertrees' Compilation of the Statutes of Tennessee, was hence one of the provisions for the consolidation of railroads contained in sections 1263 to 1272, inclusive, of the Milliken & Vertrees Compilation which, by section 1 of the Tennessee Act of March 26, 1887, c. 189, p. 321, was "declared to embrace and extend to any street railroad corporations existing in this state"; and therefore in accordance with the ruling in Frazier v. Railway Co. (Tenn.) supra, became thereafter applicable to all street railway companies, as a limitation upon their powers, whether they should consolidate or not. See Baltimore Trust Co. v. Hofstetter (6th Circ.) 85 Fed. 75, 80, 29 C. C. A. 35.

There is another distinction that should be noted; it concerns the taxicab. While the "jitney" and the taxicab are physically the same, yet the services they perform materially differ. The service of the one is designed to accommodate persons traveling along distinct routes and at a rate of fare common to all; but the service of the other is intended for the accommodation of persons whose destinations involve varying distances and lines of travel and presumably at varying prices. The two kinds of service would signify substantial difference in numbers of vehicles needed to meet the respective demands; and so the dangers attending the operation of the "jitney" presumably would materially exceed those arising in the taxicab service. These considerations are independent of the question argued by counsel whether the taxicab is not embraced within the terms of the statute— a question we do not decide.

Under such circumstances, can this court affirmatively say that the provision, requiring those engaged as such common carriers to execute a bond to protect their patrons or others, as a part of the public, against injury caused by their negligence, clearly sustains no substantial relation to the public convenience or safety? Grainger v. Douglas Park Jockey Club, 148 Fed. 513, 78 C. C. A. 199, 8 Ann. Cas. 997. It would seem clear that the provision for a bond must tend materially to induce care in the operation of the jitney and so to promote the convenience and safety of the public. This would be but the natural result of the owner's knowledge that his negligence would create liability on the bond, and in that event render it difficult, if not impossible, for him to continue the business through renewal of his bond.

The Supreme Court of the United States, in the case of M., K. & T. Ry. Co. v. May, 194 U. S. 267, 24 Sup. Ct. 638, 48 L. Ed. 971, say:

"With regard to the manner in which such a question should be approached, it is obvious that the Legislature is the only judge of the policy of the proposed discrimination. * * * When a state Legislature has declared that in its opinion policy requires a certain measure, its action should not be disturbed by the courts under the fourteenth amendment, unless they can clearly see that there is no fair reason for the law that would not require with equal force its extension to others whom it leaves untouched."

We may call attention here to the recent decision of the Supreme Court in Price v. Illinois, 238 U S. 446, 35 Sup. Ct. 892, 59 L. Ed. ‒‒‒ (decided June 21, 1915). It is true that the statute then under review was the "pure food" enactment of Illinois; and yet the recognition there given to the extent of power which resides in a state legislative body to define a policy respecting safeguards necessary to the protection of the public is in principle applicable here. The pertinency of the principles there announced will be seen in some of the decisions relied on in the opinion of Mr. Justice Holmes, such as McLean v. Arkansas, 211 U. S. 539, 547, 29 Sup. Ct. 206, 53 L. Ed. 315; Atlantic Coast Line v. Georgia, 234 U. S. 280, 288, 34 Sup. Ct. 829, 58 L. Ed. 1312; Ozan Lumber Co. v. Union County Bank, 207 U. S. 251, 256, 28 Sup. Ct. 89, 52 L. Ed. 195; Mutual Loan Co. v. Martell, 222 U. S. 225, 235, 32 Sup. Ct. 74, 56 L. Ed. 175, Ann. Cas. 1913B, 529; Miller v. Wilson, 236 U. S. 373, 383, 384, 35 Sup. Ct. 342, 59 L. Ed. 628..

[6] The equal protection clause of the fourteenth amendment does not take from the state the right or power to classify the subjects of Legislation. It is only when the classification is arbitrary and unreasonable that the court can declare it beyond the legislative authority. Jeffrey Mfg. Co. v. Blagg, 235 U. S. 577, 35 Sup. Ct. 167, 59 L. Ed. 364; Grainger v. Douglas Park Jockey Club, supra.

A classification, in order to be obnoxious to the equal protection clause of the fourteenth amendment, must be clearly and actually arbitrary and unreasonable, and not merely possibly so. Bachtel v. Wilson, 204 U. S. 36, 27 Sup. Ct. 243, 51 L. Ed. 357; Carroll v. Greenwich Insurance Co., 199 U. S. 401, 26 Sup. Ct. 66, 50 L. Ed. 246; McLean v. State of Arkansas, 211 U. S. 539, 29 Sup. Ct. 206, 53 L. Ed. 315; Grainger v. Douglas Park, supra.

We cannot say that the classification made by the Legislature of the state in the statute in question is so clearly arbitrary and unreasonable that it contravenes the equal protection clause of the fourteenth amendment. On the contrary, we think the circumstances disclose a reasonable ground for classification. Fifth Ave. Coach Co. v. New York, 221 U. S. 467, 31 Sup. Ct. 709, 55 L. Ed. 815; Quong Wing v. Kirkendall, 223 U. S. 59, 32 Sup. Ct. 192, 56 L. Ed. 350; (D. C.) 215 Fed. 138, supra; Otis v. Parker, 187 U. S. 606, 23 Sup. Ct. 168, 47 L. Ed. 323.; Grainger v. Douglas Park, supra.

[7] Upon the undisputed facts of the case, as we have already said, the plaintiff will, if unable to furnish the required bond, suffer substantial loss in the use of his machine, and in that sense a property loss. Curtin v. Benson, 222 U. S. 86, 32 Sup. Ct. 31, 56 L. Ed. 102. Can it be said, however, that he is being deprived of property in violation of the "due process" clause of the fourteenth amendment? Confessedly, yes, unless the exaction of the bond can be justified upon the ground that it results from a proper exercise of the police power of the State. Grainger v. Douglas Park, supra.

[8] It is earnestly insisted that the statute is not within the police power of the state. In Sligh v. Kirkwood, 237 U. S. 52, 58, 35 Sup. Ct. 501, 502 (59 L. Ed. ‒‒‒), Mr. Justice Day, speaking for the Supreme Court of the United States, says:

"The limitations upon the police power are hard to define, and its far-reaching scope has been recognized in many decisions of this court. At an early day it was held to embrace every law or statute which concerns the whole or any part of the people, whether it related to their rights or duties, whether it respected them as men or citizens of the state, whether in their public or private relations, whether it related to the rights of persons or property of the public or any individual within the state. New York v. Miln, 11 Pet. 102, 139 [9 L. Ed. 648]. The police power, in its broadest sense, includes all legislation and almost every function of civil government. Barbier v. Connolly, 113 U. S. 27 [5 Sup. Ct. 357, 28 L. Ed. 923]. It is not subject to definite limitations, but is coextensive with the necessities of the case and the safeguards of public interest. Camfield v. United States, 167 U. S. 518, 524 [17 Sup. Ct. 864, 42 L. Ed. 260]. It embraces regulations designed to promote public convenience or the general prosperity or welfare, as well as those specifically intended to promote the public safety or the public health. Chicago, etc., Railway v. Drainage Commissioners, 200 U. S. 561, 592 [26 Sup. Ct. 341, 50 L. Ed. 596, 609, 4 Ann. Cas. 1175]. In one of the latest utterances of this court upon the subject, it was said: 'Whether it is a valid exercise of the police power is a question in the case, and that power we have defined, as far as it is capable of being defined by general words, a number of times. It is not susceptible of circumstantial precision. It extends, we have said, not only to regulations which promote the public health, morals, and safety, but to those which promote the public convenience or the general prosperity.' * * * And further, 'it is the most essential of powers, at times the most insistent, and always one of the least limitable powers of government.' Eubank v. City of Richmond, 226 U. S. 137 [33 Sup. Ct. 76, 57 L. Ed. 156, 42 L. R. A. (N. S.) 1123, Ann. Cas. 1914B, 192]."

See Booth v. State of Indiana, 237 U. S. 391, 395, 35 Sup. Ct. 617, 59 L. Ed. ——.

In the light of these two most recent utterances of the Supreme Court, it would seem unnecessary to attempt a further definition of the "police power" or to cite other cases.

[9] If the act is to be sustained under the police power of the state, the court must be able to see that its operation tends in some degree to prevent some offense or evil, or to preserve public health, morals, safety, and welfare, and if the statute discloses no such purpose, and has no real or substantial relation to those objects, or is a palpable invasion of rights secured by the fundamental law, it is the duty of the courts so to adjudge. Minnesota v. Barber, 136 U. S. 320, 10 Sup. Ct. 862, 34 L. Ed. 455; Mugler v. Kansas, 123 U. S. 661, 8 Sup. Ct. 273, 31 L. Ed. 205; Grainger v. Douglas Park, supra.

These principles are so well settled that we deem it unnecessary to cite other authorities to sustain them; but difficulty often arises in determining whether a case falls under the one or the other of them. For the plaintiff it is insisted that this case belongs to the latter class, and he relies upon that line of cases of which Dobbins v. Los Angeles, 195 U. S. 223, 25 Sup. Ct. 18, 49 L. Ed. 169, is a type.

In that case, Mrs. Dobbins had contracted with a gas company for the erection of certain gas works, upon territory purchased by her for that purpose, outside of a district within which the city of Los Angeles had by ordinance prohibited the building of such a plant, and had obtained from the proper authorities of said city a permit to erect the gas works, upon the territory aforesaid. Thereupon the erection of the plant was begun, and more than $2,500 had been expended. Subsequently the city ordinance was amended so as to include with-

in the district in which gas works were prohibited the site on which Mrs. Dobbins was erecting her plant, and the city was proceeding to enforce the ordinance against those erecting the plant. Thereupon a bill was filed to enjoin the enforcement of the ordinance. The case was heard upon demurrer. There a private individual purchased private property, for private use, and, after obtaining the consent of the proper authorities, went to considerable expense in improving it, and it was held that the ordinance was ultra vires, in that it amounted to a taking of property without due process of law.

[10] In the case at bar, Mr. Nolen embarked in the business of a common carrier, and obtained a license to use the public streets of the city of Memphis in the prosecution of his business; and thereafter an additional burden was imposed on the business by an act of the Legislature, which required of such carriers a bond to protect those whom they might injure through negligence in the prosecution of their business.

The streets are the property of the public, under the control of the state, and are subject at all times to the police power of the state, unless that power is conferred by statute upon a municipality or other agency. Hendrick v. Maryland, 235 U. S. 622, 35 Sup. Ct. 140, 59 L. Ed. 385. The right to exercise the police power is a continuing one, and may be exercised so as to meet the ever-changing conditions and necessities of the public. Those who make investments for the purpose of using the public streets of a city for private business, under a license for that purpose, do so, and hold said property and the right to use it, subject to such other and different burdens as the Legislature may reasonably impose, for the safety, convenience, or welfare of the public.

In the Dobbins Case, supra, Mr. Justice Day says:

"Complying with the terms of the ordinance which was in force when the plaintiff in error was about to begin the erection of the gas works in controversy, a tract of land was purchased within the district wherein the erection of such works was permitted, a contract was entered into for the construction of the works, a considerable sum of money was expended. It may be admitted as being a correct statement of the law as held by the California Supreme Court that, notwithstanding the grant of the permit, and even after the erection of the works, the city might still, for the protection of the public health and safety, prohibit the further maintenance and continuance of such works, and the prosecution of the business, originally harmless, may become, by reason of the manner of its prosecution or a changed condition of the community, a menace to the public health and safety. In other words, the right to exercise the police power is a continuing one, and a business lawful to-day may in the future, because of the changed situation, the growth of population or other causes, become a menace to the public health and welfare, and be required to yield to the public good. Fertilizing Co. v. Hyde Park, 97 U. S. 659 [24 L. Ed. 1036]; New Orleans Gas Co. v. Louisiana Light Co., 115 U. S. 650, 672 [6 Sup. Ct. 252, 29 L. Ed. 516]."

These principles are controlling in the instant case, although by reason of the differing facts in the Dobbins Case they were not controlling there. We are constrained to believe that the classification of the statute now under consideration is founded on a rational basis; that it has a real and substantial relation to the public welfare; that it operates uniformly upon the class of common carriers it creates; and,

consequently, that it cannot rightfully be said to deny to the plaintiff the equal protection of the laws, or to deprive him of his property without due process of law. Grainger v. Douglas Park Jockey Club, supra, 148 Fed. 523, 78 C. C. A. 199, 8 Ann. Cas. 997. We are strengthened in these views by the recent decision of the Supreme Court of West Virginia in the case of Ex parte M. T. Dickey, 85 S. E. 781 (decided June 22, 1915, and not yet officially reported). The controlling facts of the case are closely analogous to the material facts of the present case. The legislation there involved was an ordinance of the city of Huntington regulating, licensing, and taxing certain vehicles, commonly known as "jitney busses." The ordinance forbids—

"any person, firm, or corporation to use or occupy any public street in the city of Huntington with a motor bus, without a permit or license therefor and compliance with the terms of the ordinance. * * *"

The ordinance—

"also requires the licensee to enter into a bond in the penalty of $5,000, with a condition for compliance with the provisions of the ordinance and payment of any and all lawful claims for damages for injury to persons or property sustained by passengers in them or by other persons that may be killed or injured or suffer damage to property in the city of Huntington in the operation thereof."

The ordinance was sustained. To the same effect, in its recognition of the legislative right to exact bonds of indemnity, though differing in matter of remedy, is the opinion in Hoa Le Blanc et al. v. City of New Orleans, 70 South. ——, of Supreme Court of Louisiana (decided June 28, 1915, and not yet officially reported).

Upon all the considerations mentioned, we are led to the conclusion that, while the court would have jurisdiction to grant the relief sought if the statute were violative of the fourteenth amendment, yet, as we do not think it is (and, of course, we do not pass upon any other constitutional question), the plaintiff has not made out a case entitling him to the relief prayed in the bill, and the preliminary injunction sought must be denied.

The District Judge for the Western District of Tennessee will settle the terms of the order, and will allow an appeal, if one is desired.